# RAYMOND, TREASURER OF COOK COUNTY, ILLINOIS, v. CHICAGO UNION TRACTION COMPANY.

## APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF ILLINOIS.

No. 115.   Argued April 8, 9, 1907.—Decided October 21, 1907.

The provisions of the Fourteenth Amendment are not confined to the action of the State through its legislative, executive or judicial authority, but relate to all instrumentalities through which the State acts; and so *held* that the action of a state board of equalization, the decisions whereof are conclusive, except as proceedings for relief may be taken in the courts, is reviewable in the Federal courts at the instance of one claiming to be thereby deprived of his property without due process of law and denied the equal protection of the law.

Action of a board of equalization resulting in illegal discrimination held in this case not to be action forbidden by the state legislature and therefore beyond review by the Federal courts under the Fourteenth Amendment. *Barney* v. *City of New York*, 193 N. Y. 430, distinguished.

Where a corporation has paid the full amount of its tax as based upon the same rate as that levied upon other property of the same class, equity will restrain the collection of the excess illegally assessed, there being no adequate remedy at law, when it appears that it would require a multiplicity of suits against the various taxing authorities to recover the tax and that a portion of it would go to the State against which no action would lie, and where the amount is so great that its payment would cause insolvency, and a levy upon the property—in this case a street car system—would embarrass and injure the public.

114 Fed. Rep. 557, affirmed.

THE appellants, who were defendants below, have appealed from the judgment of the Circuit Court of the United States for the Northern District of Illinois. The case is one of several argued together, the facts in regard to which are substantially the same. It was brought to enjoin the appellants from taking any further proceedings towards the collection of certain taxes assessed against the appellee upon an assessment alleged to be in violation of the Fourteenth Amendment to the Constitution of the United States, and which, if enforced, would result in the taking of appellee's property without due process of law and in denying to it the equal protection of the laws.

The case was brought in the Circuit Court of the United States at Chicago and an opinion was delivered by that court at the time of the judgment for appellee. 114 Fed. Rep. 557. An earlier opinion upon a previous motion in certain traction company cases, relating to one phase of the matter in controversy, which was pending at the time in the Southern District of Illinois, is to be found in 112 Fed. Rep. 607. The questions arise by reason of the provisions of the constitution of the State of Illinois and certain sections of its tax statutes or revenue laws. The material part of article 9, section 1, of the constitution of Illinois, 1870, is as follows:

"The general assembly shall provide such revenue as may be needful by levying a tax by valuation, so that every person and corporation shall pay a tax in proportion to the value of his, her or its property—such value to be ascertained by some person or persons to be elected or appointed in such manner as the general assembly shall direct and not otherwise; but the general assembly shall have power to tax . . . insurance, telegraph and express interests or business, vendors of patents and persons or corporations owning or using franchises and privileges in such manner as it shall from time to time direct by general law, uniform as to the class upon which it operates."

The following are the statutes in question:

"Real property shall be valued as follows: First, each tract or lot of real property shall be valued at its fair cash value estimated at the price it would bring at a fair voluntary sale." Hurd's Rev. Stat. 1899, c. 120, par. 4.

"Personal property shall be valued as follows: First, all personal property, except as herein otherwise directed, shall be valued at its fair cash value. . . . Fourth, the capital stock of all companies and associations now or hereafter created under the laws of this State, except those required to be assessed by the local assessors and hereinafter provided, shall be so valued by the state board of equalization as to ascertain and determine respectively the fair cash value of such capital stock, including the franchise, over and above the assessed value of

the tangible property of such company or association; such board shall adopt such rules and principles for ascertaining the fair cash value of such capital stock as to it may seem equitable and just, and such rules and principles when so adopted, if not inconsistent with this act, shall be as binding and of the same effect as if contained in this act, subject, however, to such change, alteration or amendment as may be found from time to time to be necessary by said board." Hurd's Rev. Stat. 1899, c. 120, § 3.

The state board of equalization is the body that makes the original assessments upon the capital stock, etc., of corporations like the ones in question here, and there is no appeal from its valuation or decision.

The following are some of the averments of the bill of complaint filed by the appellee in this suit: The defendants were, respectively, the town collector of the town of North Chicago and the county treasurer of Cook County, the city of Chicago being within the limits of that county. In November or December of the year 1900 a valid assessment was made by the state board of equalization, assessing the full value of the capital stock of the appellee, including franchises, at the sum of three millions of dollars over and above the value of the tangible property of the appellee, and in accordance with the provisions of the revenue law then in force it decided, ascertained and set down the sum of six hundred thousand dollars, one-fifth of the above-mentioned three million dollars, as the assessed value of the appellee's property, designated as "capital stock, including the franchise," for all purposes of taxation. This assessment was never vacated, annulled or set aside, but was duly certified to the proper officer, and the state, county, city and all other kinds of taxes levied for the year 1900, for and against property situated in the said town of North Chicago, were duly extended against such assessed value of six hundred thousand dollars, and the taxes were also extended against said assessment made upon the tangible property of the appellee for the year 1900, and a warrant was duly issued to the town collector

of the town of North Chicago, directing him to collect the taxes so extended. On or about the twenty-eighth day of January, 1901, appellee paid to the collector of the town of North Chicago the sum of fifty-two thousand nine hundred and two dollars, in full satisfaction of all the taxes assessed against the appellee, and no part of the money so paid by appellee in satisfaction of the taxes has ever been returned or tendered back to the company, but, on the contrary, the money has been paid over by the collector, less his commission, either directly or through the county treasurer of the county, to the various taxing and public bodies entitled to receive the same, and has been used or is still retained by said bodies, respectively.

On the tenth day of November, 1900, proceedings by taxpayers were instituted against the state board of equalization to compel that board to make an assessment for that same year against the appellee upon its capital stock and franchises. This application was made while the state board of equalization was in session, but before any final action had been taken by the board to determine and fix the proper assessment to be made on the capital stock of the appellee. It was alleged in the petition that the state board of equalization intended to adjourn its session without making any assessment upon the capital stock, including the franchises of the appellee, and on twenty-two other corporations doing business in the city of Chicago, and that it intended illegally to neglect and refuse to discharge the statutory duty obligatory upon it in that regard. Neither the appellee nor the other corporations mentioned in the petition were made parties to the proceedings, nor did they ever become parties thereto. The defendants therein, members of the state board of equalization, denied that they had refused or intended to refuse to discharge their duties as members of the board. Thereafter the board assessed the capital stock of the respondent, including the franchise, as already stated, and on the third of December, 1900, adjourned *sine die*.

Before this adjournment, and on the sixteenth of November, 1900, the mandamus proceedings had been continued, and no

action was thereafter taken therein until about the twelfth day of March, 1901. About the first of May, 1901, the proceedings came on for trial and terminated in a judgment directing that a writ should issue against the members of the state board of equalization, requiring the board to convene and forthwith value and assess the capital stock of the appellee, "so as to ascertain and determine respectively, as to each of said corporations, the fair cash value of its capital stock, including its franchises over and above the assessed value of the tangible property of such company for the year 1900."

An appeal was taken to the Supreme Court from that judgment, but no evidence was introduced on the trial of the case in support of the merits of the assessment theretofore made upon the capital stock, including franchises, of the appellee, and no argument was made either in the trial court or in the Supreme Court upon appeal in support of the merits of the assessment, the defense being rested almost wholly on objections to jurisdiction, and other legal grounds, touching the power of the court to grant the relief prayed for. (A method of assessing the capital stock had been adopted by the board, which omitted the indebtedness of the corporations as a factor in the valuation of such stock, and it was this error which led to the original assessments upon those corporations, and that caused the mandamus proceedings.)

The amount of the assessment against the appellee for the year 1900 appeared upon the trial of the mandamus proceedings, and it was found by the trial court that the assessment was so low as to show that it was in fact a fraudulent assessment, and therefore in law no assessment at all, and upon appeal the Supreme Court held that the finding of the court below was justified, and that under such circumstances, where there was in law no assessment, the court might compel the board to fulfill its duty by assessing the property of the taxpayer thus fraudulently undervalued. See *State Board of Equalization* v. *People*, 191 Illinois, 528. The state court held that under the provisions of the statute of Illinois the state board of

equalization, acting as the original assessor of the capital stock and franchises of corporations, might make an assessment of omitted capital stock and franchises of corporations under the section of the statute referred to. See secs. 276, 277 of the Revenue Act, Hurd's Stat. 1899, page 441.

The judgment of the Circuit Court granting the writ of mandamus was thereupon affirmed by the Supreme Court, and the writ was issued on the twenty-second of November, 1901, against the board. The writ, as issued under the direction of the Supreme Court, after reciting that the previous assessment was in fact no assessment in law and was unreasonable, arbitrary and fraudulent, and was not the expression or the result of the honest judgment and discretion of the state board of equalization and the members thereof, and amounted to a wrongful, willful and arbitrary failure, omission and refusal to assess the capital stock of the appellee at its fair cash value over and above tangible property of the appellee, and was a fraud in law and upon the relators and the people, directed the members of the board to assemble and to forthwith proceed to value and assess the capital stock, including the franchises, of the appellee as of the first day of April, 1900, in the manner provided by law, "and that you, the said state board of equalization and the members thereof, do value the capital stock of said corporations and each of them so as to ascertain and determine, respectively, as to each of them, the fair cash value of its capital stock, including the franchise, over and above the equalized assessed value of the tangible property of such corporation on the first day of April, A. D. 1900, and that in arriving at said valuations and assessments of capital stock, including the franchises of the corporations herein named, the said state board and the members thereof, from the best information obtainable by it and them, shall ascertain and take into consideration, among other things, as to each said corporation, as the same was on April 1, 1900, the market value, or, if no market value, then the fair cash value of its shares of stock and the total amount of all indebtedness, except the indebted-

ness for current expenses, excluding from such expenses the amount for purchase or improvement of property and the assessed or equalized value of tangible property owned by said corporations, respectively, on April 1, 1900."

Pursuant to what the defendants believed to be the command of the writ, and without any independent judgment of their own, the members of the board proceeded to make an assessment upon the aggregate of the value of the capital stock, including franchises, of the appellee and including its indebtedness, deducting therefrom the assessed equalized valuation of the real estate and tangible personal property belonging to the appellee, and then assessing for taxation one-fifth thereof. At this time and for years previous thereto all property, real and personal, corporate or individual, throughout the State, as well as in Cook County, had been assessed at not to exceed sixty-five or seventy per cent of its fair cash value, and one-fifth of that per cent was the amount upon which the tax was laid. This assessment, however, was not so made, but one-fifth of the full value was assessed, and the roll thus made up was delivered to the proper officer and an extension of the taxes made and a warrant delivered to the town collector for collection. The total tax of the appellee on the second assessment amounted to about the sum of one million dollars more than the tax paid under the first assessment. It is the duty of the collector and the county treasurer to enforce the collection of these taxes, together with a penalty by reason of the delay in payment, and to that end levy the amount by distress and sale of the goods and chattels of the appellee, and which cannot be prevented or defended by the appellee otherwise than by payment or by a bill in chancery. The appellee's personal property consists chiefly of its cars and other personal property actually used in its business of transporting passengers, and levy of said tax would greatly embarrass it in its business and also injure the public using its cars. After collecting the taxes it is the duty of the collector, and he is required by law, to pay over and distribute them in the proportions designated in the

tax book to the city treasurer of the city of Chicago, the county treasurer of Cook County, the treasurer of the sanitary district and the other officers and authorities entitled to receive the same. In order to recover back the amount thus paid to the collector appellee would be obliged to bring separate suits against each one of the bodies receiving its proportionate share of said tax, necessitating a multiplicity of suits. Repayment of the amount which should be paid for the uses and purposes of the State of Illinois could not be enforced by any legal proceeding whatever, nor could repayment be obtained from anyone which would cover the costs, including the commissions deducted for the recovery of the taxes; and if proceedings to collect the taxes were not enjoined great and irreparable injury would result to the appellee, for which there was no complete or adequate remedy at law. It was then alleged that to pay the enormous sum of over a million of dollars, claimed as the tax for 1900, would render it impossible for the company to pay its rentals or preserve its leasehold interests, and would necessarily result in its insolvency. It was also averred that there were hundreds of corporations subject to be assessed by such board in the same manner that the appellee was assessed under the writ of mandamus issued in respect to the taxes assessed against it, and that not one of such corporations was, as a matter of fact, so assessed, but a discriminating, crushing tax burden was placed upon appellee and the other corporations mentioned in the writ, contrary to the provisions of the Constitution of the United States and in violation of the constitution of the State of Illinois.

Within a month of the time when the assessment of 1900 was made under the command of the writ the same board of equalization made an assessment upon the property of the appellee for the year 1901, using the best judgment of its members, and at that time it equalized the assessment with other property assessed throughout the State, and the difference between the two assessments is most material. The facts are stated in the opinion of the circuit judge, as follows:

"A comparison between these records of the state board is significant. In the case of the Chicago Union Traction Company the assessment for the year 1901, capital stock and tangible property aggregated, falls from a little over fourteen millions of dollars (the reassessment for 1900) to about eight millions two hundred and fifty thousand dollars, a loss of about forty per cent.

"In the case of the Chicago Consolidated Traction Company, the depreciation is from a little over three millions seven hundred and fifty thousand dollars to about two millions of dollars, or about forty-seven per cent.

"In the case of the People's Gas Company, the depreciation is from over twelve millions and a half to about eight millions and a half, or about thirty-two per cent.

"In the case of the Chicago City Railway, the depreciation is from a little over six millions to a little over four millions and a quarter, or about thirty per cent.

"In the case of the Chicago Telephone Company, the depreciation is from a little less than two millions six hundred thousand dollars to a little over one million seven hundred thousand dollars, or about thirty-four and one-half per cent.

"In the case of the Chicago Edison Company, the depreciation is from a little over two millions four hundred thousand dollars to a little over one million three hundred thousand dollars, or about forty-six per cent.

"In the case of the South Chicago City Railway, the depreciation is from nearly five hundred and seventy thousand dollars to a little less than three hundred thousand dollars, or about forty-seven per cent.

"These assessments, so widely divergent, were upon the same properties, by the same board, entered almost on the same day. The dates as of which they spoke were, it is true, a year apart; the one being the first of April, 1900, and the other of the first of April, 1901. But the tide of stock quotations, and the tide of current values, were higher on the latter day than the former. If between these two assessments a considerable disparity

should exist, the increase ought to be found in the assessment for 1901, and not in that of 1900."

Other averments were made in the bill, designed to raise other questions than the ones discussed in the following opinion, and for that reason are not set forth.

The defendants put in their answer and joined issue in regard to many of the material averments contained in the bill. The case was referred to a master and testimony was taken and a report made by the master to the court, in which he found all the material averments of the bill had been proved. The court approved the findings of the master, but before granting the injunction it ordered that the appellee should pay to the city an amount which the court found was fairly and equitably due from the appellee as its proportion of the taxes for 1900. The sum was arrived at by the court by a computation which, in its judgment, produced a fair and proper result. The amount directed to be paid by the court before the injunction should issue was the sum of $134,350.03, which sum the appellee paid, and the injunction issued as directed. The appellants duly excepted to the findings of the master that the amount of taxes equitably due from the appellee was as just stated, and the appellants insisted that the finding of the master of the amount of tax to be paid should have been the sum of $961,154.15 for general taxes, and $58,057.63 for interest thereon, making a total of $1,019,211.78 as due from the appellee for the taxes of 1900, as evidenced by the collector's warrant in the hands of the defendants in this suit.

It was also averred that the assessment was grossly excessive and the property greatly overvalued.

Mr. David K. Tone and Mr. James Hamilton Lewis, with whom Mr. Edward J. Brundage, Mr. Harry. A. Lewis, Mr. William F. Struckmann, Mr. William H. Stead and Mr. George B. Gillespie were on the brief, for appellants:

Equality and uniformity of taxation is not a right guaranteed by the Federal Constitution. State Railroad Tax Cases,

92 U. S. 575, 618; *Davidson* v. *Board of Admrs. of New Orleans,*
96 U. S. 97; *Kelly* v. *City of Pittsburgh,* 104 U. S. 78; *Merchants
& Mfrs. Nat. Bank* v. *Pennsylvania,* 167 U. S. 461, 464; *Hen-
derson Bridge Co.* v. *City of Henderson,* 173 U. S. 592; *Magoun*
v. *Ill. Trust & Sav. Bank,* 170 U. S. 283, 293, 295; *Connolly* v.
*Union Sewer Pipe Co.,* 184 U. S. 540, 562; *State of Missouri
ex rel. Hill* v. *Dockery,* 191 U. S. 165, 170; *Travelers Ins. Co.* v.
*Connecticut,* 185 U. S. 364, 371.

Where the constitution and the laws of a State are just and
fair, and the sole grievance of which a party complains, is that
the officers of the State, charged with executing those laws,
have deprived that party of his property, contrary to the
constitution and the laws of the State, and in violation of
the terms thereof, no Federal question is presented, for, under
the above circumstances, it will be presumed that the state
courts will give full relief against the illegal and unauthorized
acts of the officers of the State. *Illinois Central R. R. Co.* v.
*Hodges,* 113 Illinois, 323; *New Haven Clock Co.* v. *Kocher-
sperger,* 175 Illinois, 383; *Coxe Bros. Co.* v. *Raymond,* 188 Illi-
nois, 571; *Siegfried* v. *Raymond,* 190 Illinois, 424.

The mere unauthorized acts of state officers, when per-
formed contrary to state law fail to give Federal jurisdiction
as has been frequently pointed out by this court when deter-
mining under what circumstances criminal prosecutions may
be removed from a state court into a court of the United States
by reason of the denial by the State of the rights and immuni-
ties guaranteed to accused persons under the Fourteenth
Amendment.

In finding what constitutes state action within the mean-
ing of § 641, Rev. Stats., this court has necessarily deter-
mined what constitutes state action within the meaning of
the Fourteenth Amendment. *Strauder* v. *West Virginia,* 100
U. S. 303.

Under *Barney* v. *City of New York,* 193 U. S. 430, appellee's
bill of complaint should be dismissed for want of jurisdiction.
See also *Manhattan Ry. Co.* v. *New York,* 18 Fed. Rep. 195;

*Kierman* v. *Multnomah County,* 95 Fed. Rep. 849; *Re Storti,* 109 Fed. Rep. 807.

Equally untenable is the claim in appellee's bill of complaint, that under the circumstances there described the appellee was deprived of its property without due process of law because it had no opportunity to be heard at the time the assessment complained of was levied against it.

Even the *ex parte* orders and directions of the executive and ministerial departments of the Federal Government affecting property and property rights, constitute due process of law if the party aggrieved may go into a court of equity and obtain redress against the unauthorized or wrongful acts of such officers. *Clearing House* v. *Coyne,* 194 U. S. 497.

Courts of equity in Illinois furnish complete redress in case the state board of equalization has exceeded its authority, or if its action is palpably wrong. *Illinois Central Railroad Company* v. *Hodges,* 113 Illinois, 323.

There is no competent evidence in this record tending to sustain the material allegations of appellee's bill of complaint with reference to the assessment complained of.

The testimony of the individual members of the state board of equalization in reference to the operation of their minds at the time they made the assessment complained of was incompetent, and should have been excluded by the Circuit Court. The recorded judgments of judicial and quasi-judicial bodies, cannot be impeached by the subsequent testimony of the members of said bodies, as to how their conclusions were arrived at. *Wright* v. *Chicago,* 48 Illinois, 285; *Quick* v. *Village of River Forest,* 130 Illinois, 323; *Ryder Estate* v. *Alton,* 175 Illinois, 94; *Washington Park Club* v. *Chicago,* 219 Illinois, 323; *Insurance Co.* v. *Pollak,* 75 Illinois, 292; *Stock Exchange* v. *Gleason,* 121 Illinois, 502; *Packet Co.* v. *Sickles,* 5 Wall. 580; *Fayerweather* v. *Ritch,* 195 U. S. 276.

The extracts from the reports of the Railroad and Warehouse Commissioners and from the reports of the Board of Agriculture for the State of Illinois were incompetent. *Hegler*

v. *Faulkner*, 153 U. S. 109; *Chaffee* v. *United States*, 18 Wall. 516; *Swift* v. *State of New York*, 89 N. Y. 52; *Culver* v. *Caldwell*, 137 Alabama, 125; *Gordon* v. *Bucknell*, 38 Iowa, 438; *State* v. *Krause*, 58 Kansas, 651; *Wellington* v. *Railroad Co.*, 158 Massachusetts, 185; *Jones* v. *Guano Co.*, 94 Georgia, 14; *State* v. *Wells*, 11 Ohio, 261.

The figures taken from the books of the Union Stock Yard and Transit Company and from Brown's Directory of American Gas Companies were not competent evidence and should have been excluded.

Private publications, whether written or printed, are incompetent as evidence, unless accompanied by the testimony of the person who compiled the information, to the effect that the compilations therein made are true, of his own personal knowledge. *Seymour* v. *McCormick*, 19 How. 96; *Langley* v. *Smith*, 3 N. Y. St. Rep. 276; *State* v. *Daniels*, 44 N. H. 383; *Richardson* v. *Stringfellow*, 100 Alabama, 416; *Cooke* v. *Slate Co.*, 36 Ohio St. Rep. 135; *Spalding* v. *Hedges*, 2 Pa. St. 240.

If the contention of appellee be sound, that the reassessment of 1900 was void and illegal because the board had exhausted its power in making the first assessment, then appellee had an adequate remedy at law, for it could have paid the void assessment and then have recovered the money back.

The Supreme Court of Illinois held that the first assessment was fraudulent and void, and affirmed the judgment of the state circuit court directing the making of the second. A construction placed by the highest court of the State upon the taxing laws of that State is binding upon a Federal court. *State Railroad Tax Cases*, 92 U. S. 575, 618.

Where a tax is illegal and void and can be paid under protest and then recovered back from the collector, the aggrieved party has an adequate remedy at law, and a court of equity will not assume jurisdiction. *Shelton* v. *Platt*, 139 U. S. 591.

Overvaluation of property by an assessing body, unaccompanied with fraud or bad faith, furnishes no ground for

equitable intervention.  *State Railroad Tax Cases,* 92 U. S.
575; *Railroad Co.* v. *Backus,* 154 U. S. 421; *Maish* v. *Arizona,*
164 U. S. 599.

*Mr. William G. Beale* for The Chicago Edison Company and
The Chicago Telephone Company, with whom *Mr. Gilbert E.
Porter, Mr. Buell McKeever, Mr. Waldo F. Tobey, Mr. Charles
S. Holt* and *Mr. William P. Sidley* were on the briefs; *Mr.
James F. Meagher* for The People's Gas Light and Coke Com-
pany; *Mr. John P. Wilson* for The Chicago City Railway
Company.   *Mr. John S. Miller* and *Mr. Merritt Starr* filed a
brief for the South Chicago City Railway Company; *Mr.
William W. Gurley, Mr. Arthur Dyrenforth, Mr. Isaac M.
Jordan* and *Mr. Howard M. Carter* filed a brief for The Chi-
cago Consolidated Traction Company; and *Mr. William W.
Gurley, Mr. Arthur Dyrenforth* and *Mr. Howard M. Carter* filed
a brief for The Chicago Union Traction Company:[1]

Although to make out a case under the Fourteenth Amend-
ment it must be shown that the act complained of is the act
of the State; the prohibitions of the amendment refer to all
instrumentalities of the State—to its legislative, executive and
judicial authorities and, therefore, whoever by virtue of public
position under a state government deprives another of any
right protected by the amendment against deprivation by the
State violates the constitutional inhibition and, as he acts in
the name of the State and for the State, and is clothed with
the State's power, his act is that of the State.   Were that
not so, the constitutional prohibition would have no meaning
and the State would be placed in the position of having clothed
one of its agents with power to annul or evade the Constitution
of the United States.   *Ex parte Virginia,* 100 U. S. 339–347;
*C., B. & Q. R. R.* v. *Chicago,* 166 U. S. 226; *Scott* v. *McNeal,*
154 U. S. 34; *Regan* v. *Farmers Loan & Trust Co.,* 154 U. S.
362; *Neal* v. *Delaware,* 103 U. S. 370; *Coulter* v. *L. & N. Ry.*

---

[1] For other cases argued simultaneously herewith, see *post,* p. 42.

Co.; 196 U. S. 599; *Williams* v. *Mississippi*, 170 U. S. 213; *Chi Lung* v. *Freeman*, 92 U. S. 275; *Soon King* v. *Crowley*, 113 U. S. 703; *Arrowsmith* v. *Harmoning*, 118 U. S. 194; *Yick Wo* v. *Hopkins*, 118 U. S. 356; *Railroad and Telephone Cos.* v. *Board of Equalizers*, 85 Fed. Rep. 302; *Nashville, C. & St. L. Ry.* v. *Taylor*, 86 Fed. Rep. 168; *Taylor* v. *L. & N. R. Co.*, 88 Fed. Rep. 350; *Louisville Trust Co.* v. *Stone*, 107 Fed. Rep. 305.

The collection of the taxes extended upon the reassessment of the capital stock of appellee made by the state board of equalization, will deprive appellee of its property without due process of law. Every step, regulation and provision in any proceeding under the law of a State making for the protection of a person's rights or property must be observed. *C., B. & Q. R. R.* v. *Chicago*, 166 U. S. 226.

The action of the state board did not constitute due process of law. The members of the state board did not exercise their judgment. The exercise of such judgment is an indispensable element of due process. In considering whether due process has been had, this court has frequently said it is the substance that the law regards, not the form. An exercise of the judicial officer's judgment, in whatever legal form it may have been made, is the substance of a trial, or of an assessment. *C., B. & Q. R. R. Co.* v. *Paddock*, 75 Illinois, 616.

The state board of equalization did not equalize the assessment so made with the assessments of other property in the State of Illinois. Equalization is the primary duty of the board, both with reference to assessments within the original jurisdiction of the local assessors and assessments within the original jurisdiction of the state board of equalization. *Railroad Co.* v. *Taylor*, 86 Fed. Rep. 184; *Law* v. *People*, 87 Illinois, 405; *Railroad and Telephone Cos.* v. *Board of Equalizers*, 85 Fed. Rep. 302 (305, 306).

The reassessments made by the state board are so grossly excessive as to amount to fraudulent assessments. *People ex rel. Goggin* v. *Board of Equalization*, 191 Illinois, 529.

Other corporations of the same class were not assessed on the same basis.

Discrimination and unauthorized classification are contrary to the principle of equality in taxation prescribed by the constitution and statutes of Illinois and a discriminating assessment does not constitute a due observance of the regulations of the law of the land made for the protection of appellee's rights, under the definition of due process above referred to. *Cummings* v. *Bank*, 101 U. S. 153.

Mr. Justice Peckham, after making the foregoing statement of facts, delivered the opinion of the court.

The claim that the action of the state board of equalization in making the assessment under consideration was the action of the State, and if carried out would violate the provisions of the Fourteenth Amendment to the Constitution of the United States, by taking property of the appellee without due process of law, and by failing to give it the equal protection of the laws, constitutes a Federal question beyond all controversy. How that question should be decided is another matter which we will proceed at once to discuss.

The state board of equalization is one of the instrumentalities provided by the State for the purpose of raising the public revenue by way of taxation. In regard to corporations of the class of which the appellee and the other corporations involved here are members, it is the duty of that board to make an original assessment upon them. From the decision of the board in making such assessment no appeal is provided for, and such decision is therefore conclusive, except as proceedings for relief may thereafter be taken in the courts. As to the assessments of local assessing bodies, the board is one of review, but its decisions are equally conclusive, as in the case of original assessments. Acting under the constitution and laws of the State, the board therefore represents the State, and its action is the action of the State. The provisions of the Fourteenth

Amendment are not confined to the action of the State through its legislature, or through the executive or judicial authority. Those provisions relate to and cover all the instrumentalities by which the State acts, and so it has been held that, whoever by virtue of public position under a state government, deprives another of any right protected by that amendment against deprivation by the State, violates the constitutional inhibition; and as he acts in the name of the State and for the State, and is clothed with the State's powers, his act is that of the State. *Chicago, Burlington & Quincy R. R.* v. *Chicago,* 166 U. S. 226. Following the above case the Federal courts throughout the country have frequently reviewed the action of taxing bodies when under the facts such action was in effect the action of the State, and therefore reviewable by the Federal courts by virtue of the provisions of the amendment in question. See *Nashville &c. Ry.* v. *Taylor,* 86 Fed. Rep. 168; *Louisville Trust Co.* v. *Stone,* 107 Fed. Rep. 305. In the last case, which related to enjoining the collection of alleged illegal taxes by reason of discrimination, the court said: "It may be conceded that, if the allegations of the bill are made out, there exists, in respect to the property of complainant and others similarly situated, a systematic, intentional, and illegal undervaluation of other property by taxing officers of the State, which necessarily effects an unjust discrimination against the property of which the plaintiff is the owner, and a bill in equity will lie to restrain such illegal discrimination, and that in such cases Federal jurisdiction will arise because of the equal protection of the laws guaranteed by the Fourteenth Amendment."

The same principle has been recognized in *Reagan* v. *Trust Co.,* 154 U. S. 362, 390; *Backus* v. *Depot Co.,* 169 U. S. 557, 565; *Fargo* v. *Hart,* 193 U. S. 490, 502.

The case before us is one which the facts make exceptional. It is made entirely clear that the board of equalization did not equalize the assessments in the cases of these corporations, the effect of which was that they were levied upon a different principle or followed a different method from that adopted in

the case of other like corporations whose property the board had assessed for the same year. It was not the mere action of individuals, but, under the facts herein detailed, it was the action of the State through the board. There is here no contention of illegality simply because of assessing the franchises of these corporations at a different rate from tangible property in the State, which the State might do, *Coulter* v. *Railroad*, 196 U. S. 599, but it is asserted that the board assessed the franchises and other property of these companies at a different rate and by a different method from that which had been employed by the board for other corporations of the same class for that year. The result is an enormous disparity and discrimination between the various assessments upon the corporations. The most important function of the board, that of equalizing assessments, in order to carry out the provisions of the constitution of the State in levying a tax by valuation, "so that every person shall pay a tax in proportion to the value of his, her or its property," was, in this instance, omitted and ignored, while the board was making an assessment which it had jurisdiction to make under the laws of the State. This action resulted in an illegal discrimination, which, under these facts, was the action of the State through the board. *Barney* v. *City of New York*, 193 U. S. 430, holds that where the act complained of was forbidden by the state legislature, it could not be said to be the act of the State. Such is not the case here.

We are also of opinion that the case is one over which equity has jurisdiction. In *Cummings* v. *National Bank*, 101 U. S. 153, this court held that the case was one properly brought in equity. It was to restrain the collection of a tax. While the court held that the position of the bank as trustee entitled it to maintain an action in equity and also under the statute of Ohio, it was further held (page 157): "Independently of this statute, however, we are of opinion that when a rule or system of valuation is adopted by those whose duty it is to make the assessment, which is designed to operate unequally and to violate a fundamental principle of the Constitution, and when

this rule is applied not solely to one individual, but to a large class of individuals or corporations, that equity may properly interfere to restrain the operation of this unconstitutional exercise of power." We have in the case at bar similar facts. A system of valuation was adopted and applied to a large class of corporations, differing wholly from that applied to other corporations of the same class, and resulting in a discrimination against the appellee of the most serious and material nature. It is not a question of mere difference of opinion as to the valuation of property, but it is a question of difference of method in the manner of assessing property of the same kind. Although the law itself may be valid and provide for a proper valuation, yet if, through mistake on the part of the State, through its board of equalization and while acting as a *quasi*-judicial body, the board erred in the method to be pursued in relation to the corporations now before us, the mistake is one which may be corrected in equity.

In all these cases, however, where there is jurisdiction to tax at all, equity will not grant an injunction to restrain the collection, even of an illegal tax, without the payment on the part of the taxpayer of the amount of a tax fairly and equitably due. *Bank* v. *Marye*, 191 U. S. 272, and cases cited. Acting upon this principle, the Circuit Court refused to issue the injunction until the appellee paid the amount which the court found to be a fair and just amount due from the appellee for the tax of the year 1900, based upon a tax at the same rate as that levied upon other property and on corporations of the same class within the State. The sum to be paid by the appellee herein, as decided by the circuit judge, was $134,350.03. That sum was paid instead of $1,019,211.78, called for by the warrant in the hands of the collector.

Finally it is objected that the appellee had a complete and adequate remedy at law by paying the amount of the warrant, and then suing the collector to recover the same back as money paid under duress, although upon a void warrant. Undoubtedly if there be a complete and adequate remedy at law in such

a case as this, the remedy in equity will not be recognized. Assuming the tax to be void, equity will not restrain by injunction its collection, unless there be some other ground for equitable interposition. *Shelton* v. *Platt*, 139 U. S. 591; *Allen* v. *Palace Car Co.*, 139 U. S. 658; *Express Co.* v. *Seibert*, 142 U. S. 339. In the cases in 139 U. S., *supra*, it was recognized that no ground appeared for the interposition of a court of equity; because of the existence of a statute in the State of Tennessee providing for paying the amount of the alleged illegal tax to the officer holding the warrant, and granting to the taxpayer a right to commence an action to recover back the tax thus paid, the statute providing that the officer should pay the amount received into the state treasury, where it was to remain until the question was decided, and, if it was decided in favor of the taxpayer, provision was made for the repayment of the amount by the State. The other averments, beside that of the illegality of the tax, made in these two cases, were held not to constitute a ground for the interposition of a court of equity by restraining the collection of the tax. In the case in 142 U. S., *supra*, the court held that there was no ground to warrant the interposition of a court of equity. The case was decided upon the ground that the averment of illegality of the tax was not sustained. There is no statute of a similar kind in Illinois which has been called to our attention, but some of the cases in that State hold that such a suit may be maintained against the collector when the money was paid under protest.

In the case at bar it is averred that it is the duty of the collector, having received the money on his warrant, to pay the sum so received in the proportions designated in his tax books to the city treasurer of the city of Chicago, the county treasurer of the county of Cook, the treasurer of the sanitary district, and other officers and authorities entitled to receive the same, and if the plaintiff instituted suit to recover back the taxes so paid to the town or county collector he would be obliged to bring separate suits against each one of the several taxing bodies receiving its proportionate share of the tax,

thereby necessitating a multiplicity of suits, and the proportion of the tax which would go to the State of Illinois could not be collected back by any legal proceeding whatsoever; and if repayment could be compelled from the city of Chicago and other taxing bodies, such repayment would not cover the cost, including commissions deducted for the collection of the tax, and in that way it was averred that the appellee would be subjected to great and irreparable injury, for which there was not a complete or adequate remedy at law. There was also the allegation, already referred to in the foregoing statement, that if compelled to pay this enormous tax it would be rendered insolvent. We think all these allegations combined take the case out of the class where relief is prayed for, founded simply upon the unconstitutionality of the law under which the tax is levied, or upon the illegality for any other reason, of the tax itself, and bring the case within the jurisdiction of a court of equity. And, in addition, there is the allegation that a levy upon the property of the appellee would interfere with the operation of the street car system in the city of Chicago, operated by the appellee, and would greatly embarrass and injure the public who have to use the cars.

Upon the whole, we think it is apparent that no adequate remedy at law exists in this case, and that the judgment enjoining the collection of the balance of the tax levied against the appellee, above that which has been paid under the direction of the Circuit Court, must be          *Affirmed.*

MR. JUSTICE HOLMES, dissenting: Notwithstanding my unfeigned deference to the judgment of my brethren I cannot but think that the Circuit Court was wrong in taking jurisdiction of this case. We all agree, I suppose, that it is only in most exceptional cases that a State can be said to deprive a person of his property without due process of law merely because of the decision of a court without more. The discussion in *Chicago, Burlington & Quincy R. R.* v. *Chicago,* 166 U. S. 226, concerned a judgment assumed to be authorized by a

statute of the State, and in that case the judgment of the state court was affirmed, so that no very extensive conclusions can be drawn from it. So far as I know this is the first instance in which a Circuit Court has been held authorized to take jurisdiction on the ground that the decision of a state tribunal was contrary to the Fourteenth Amendment.

It seems to me that the appellee should not be heard until it has exhausted its local remedies; that the action of the state board of equalization should not be held to be the action of the State until, at least, it has been sanctioned directly, in a proceeding which the appellee is entitled to bring, by the final tribunal of the State, the Suprem Court. I am unable to grasp the principle on which the State is said to deprive the appellee of its property without due process of law because a subordinate board, subject to the control of the Supreme Court of the State, is said to have violated the express requirement of the State in its constitution; because, in other words, the board has disobeyed the authentic command of the State by failing to make its valuations in such a way that every person shall pay a tax in proportion to the value of his property. I should have thought that the action of the State was to be found in its constitution, and that no fault could be found with that until the authorized interpreter of that constitution, the Supreme Court, had said that it sanctioned the alleged wrong. *Barney v. New York,* 193 U. S. 430.

As I think that the Circuit Court ought to be ordered to dismiss this case, I shall not discuss the merits. But I cannot forbear adding that, so far as the appellee is complaining that it has been compelled to pay the full amount of the tax due from it, and is founding its complaint on the fact that other parties are escaping their liabilities whether through mistake or still uncorrected fraud; it seems to me to show no sufficient ground for relief, unless exceptional reasons exist not adverted to in the judgment of the court.

MR. JUSTICE MOODY concurs in this dissent.