**Alfred B. ROBINSON et al., Plaintiffs,**

v.

**Sam COOPWOOD et al., Defendants.**

**No. 6830–K.**

United States District Court
N. D. Mississippi, W. D.

Nov. 7, 1968.

Armand Derfner, Jackson, Miss., George M. Strickler, Jr., New Orleans, La., for plaintiffs.

Robert F. Crutcher, D. Rook Moore, III, Holly Springs, Miss., for defendants.

## OPINION OF THE COURT

KEADY, Chief Judge.

This case involves the constitutionality of a municipal ordinance of Holly Springs, Mississippi, requiring that one hour's notice be given to the City Police Department before any march in protest of grievances may take place in that city.

The ordinance in question was passed in response to increased civil rights activity in the area, brought in the wake of the April 4, 1968, murder of the Reverend Dr. Martin Luther King some thirty miles away in Memphis, Tennessee. About two days after Dr. King's death there was conducted a march of some 500 people, which began on the Rust College campus, and proceeded down Rust Avenue, up Memphis Street, on to College and Randolph Streets, and back to the Rust campus. The demonstration was peaceful; no arrests were made during the march. Leaders of this march were the plaintiffs, as well as Negro citizens identified as Boyd, Conway and Reverend Stewart.

Between the April 6, 1968, march and May 10, 1968, the date of the passage of the ordinance sought to be declared unconstitutional here, there ensued a series of marches calculated to demonstrate to the community at large certain grievances held by the Negro population. The marches were conducted on the public streets and sidewalks of Holly Springs, Mississippi, and occasionally they involved sizeable numbers of both adults and students. The number of such marches, which were conducted both at night and during the daytime, was variously estimated by the witnesses to be from as low as 8 or 10 to as high as 30 or 32. Although marches occurred as frequently as two or three in a single day, no arrests were made in connection with any march prior to May 15, 1968.

On May 10, 1968, there was unanimously passed by the Board of Aldermen of the City of Holly Springs an ordinance regulating peaceful demonstrations within the city limits. A copy of the ordinance is attached as an appendix to this Opinion. Persons desiring to conduct mass assemblages and other related activity, were required, inter alia, to notify the city police department of their intention at least one hour in advance of the commencement thereof. Parties desiring to picket only, however, were required to give advance notice only if 10 or more participants were to be involved. Peaceful marching was permitted subject to the further requirements that the participants in such activities proceed in no greater number than two abreast and in groups no larger than 20, that no two such demonstration activities be conducted simultaneously, and that participants obey all traffic signals and walk, as nearly as possible, only on the right-hand edge of public streets. There was proscribed any "singing, chanting or other conduct calculated to disturb the peace of homes adjacent to the route of march", between the hours of 7:30 p. m. and 7:30 a. m.

Peaceful picketing was made subject to similar restrictions. On the day following its passage, a copy of the ordinance was presented to plaintiff Young by Mayor Coopwood, and at all pertinent times, plaintiffs were generally familiar with its provisions.

On the evening of May 12 or 13, at 9:30 p. m., plaintiffs organized and led a march of some 200 persons from Anderson Chapel, which is 800 yards from the courthouse square, directly to the courthouse steps. The group passed two street traffic lights, one of which was about 250 yards from the Chapel and the other at the corner of the courthouse square. There were some singing, praying, and speech-making but no fights, disorders or arrests.

On May 15, 1968, at approximately 10 p. m., plaintiffs Gipson and Cottenreader led a spontaneous march of about 50 persons from Anderson Chapel on the same route to the court square. They were met there by Ray Bright, a Marshall County Deputy Sheriff, and two other law enforcement officers, who directed them to turn around and go back, because they had not given the requisite one hour's notice before beginning the march. Upon request, they were given permission, however, to remain assembled there about five minutes, long enough to conduct singing and a prayer, at the conclusion of which they were ordered by Mayor Coopwood, who had arrived at the scene, to disperse because they were in violation of the ordinance. He did not specify in what manner the ordinance was being violated. When the crowd failed to break up, the Mayor ordered the arrest of approximately 20 persons. Among those arrested were plaintiffs Robinson, Gipson Pegues, Young, Caldwell and Cottenreader, as well as Boyd, Stewart and Conway, other Negro leaders who are not parties to this action. At the height of the arrest, there were, other than the 50 or so marchers, about 15 to 30 bystanders, and about 20 law enforcement officers, approximately 15 of whom were auxiliary personnel. Of the plaintiffs arrested, only Gipson, Cottenreader and Caldwell were actual participants in that night's march; Robinson, Pegues and Young arrived after the march had reached the courthouse square. Many of the persons who were arrested were taken to the Marshall County jail under an arrangement whereby County Sheriff Johnnie Taylor agreed to relieve some of the problems caused by the space limitations of the municipal jail.

On May 18 and 19 most of those arrested in connection with the marching, including the plaintiffs here, were tried in the City Court of Holly Springs, with defendant Mayor Coopwood presiding as Police Justice and ex-officio Justice of the Peace. Some defendants were not represented by counsel, pleaded guilty and received nominal fines, except for a number of minors against whom charges were dropped. Six of those arrested, the named plaintiffs in this action, insisted upon their right to counsel, pleaded not guilty, and each was convicted on one or more charges and sentenced to pay fines. Plaintiff Cottenreader, who had a prior police record, was sentenced also to 60 days in jail. All named plaintiffs appealed their convictions, and those proceedings are still pending in state court.

Between the date of the death of Martin Luther King on April 4, 1968, and that of the arrests in question here, there took place incidents which indicated that there existed a degree of racial tension in Holly Springs. Isolated incidents of violence and threats of violence occurred during this period. There were fires of a possible incendiary origin at the home of Ed Jones, a white person, and at Chewalla Mission Church, a white church, on the evenings of April 5 and 15 respectively. One fire was reported by the log of Fire Chief Fant to have been started by Molotov cocktails, but otherwise his record indicates that there were no unusual fires. Eleven fires were reported in April and 4 reported in May as compared to 10, 10, 8 and 10 of the preceding months of December 1967 and January, February and March

1968, respectively. The reported incidents of violence were as follows: There was committed upon Lee Bynum, a white male, an assault by U. Z. Nunnery, a Negro leader of wide repute in the community, who was arrested and convicted on charges arising from this incident. On the night of Dr. King's death there occurred incidents of rock-throwing in the vicinity of Rust College, a Negro institution; and there is also evidence that plaintiff Reverend Pegues made, on at least one occasion, an inflammatory speech from the courthouse steps, calculated, in the opinion of the defendants, to incite local Negros to lawlessness.

Despite the occurrence of several such incidents of violence or threatened violence, however, there was no real trouble other than an occasional clogging of streets and blocking of traffic resulting from the large numbers of persons who participated in the various marches. Restrictions which were imposed by the City Council on the sale of liquor and gasoline on the evening following the killing of Dr. King were rescinded after about four days, and were not thereafter reinstated because of a lessening of racial tensions within the community. In short, the evidence shows that, although there existed public disturbances and a justifiable measure of fear for the safety of its citizens during the four or five days immediately following April 4, 1968, the unrest within the community soon subsided, largely as a result of the ability of the Negroes to vent their grievances through peaceful public protest.

The march conducted on the evening of May 15, 1968, was a peaceful one, and the infractions for which plaintiffs were arrested were of a technical nature only. They admittedly did not give the police one hour's notice of their intention to march. Being aware of the terms of the ordinance, the leaders of the march crossed streets at green traffic lights only, although some followers may have failed to heed the traffic signals. For the most part, the marchers proceeded across streets in the marked pedestrian lanes.

Also, they kept, for the most part, as nearly as possible, to the right-hand side of the streets, and attempted to avoid obstructing traffic. There was, in conjunction with the march, singing near residences within proscribed hours, but otherwise no indication that the group was particularly loud or raucous. But for their violation of the notice requirements of the ordinance, they would have been permitted, as on previous occasions, to publicly announce their grievances, to utter protests, and to say whatever they chose upon the subject of their complaints.

Since the arrests of May 15, 1968, no further marches or demonstrations by Negro citizens have occurred at Holly Springs. The court finds that enforcement of the ordinance had a stifling effect upon the exercise of the constitutional rights of free speech and assembly. The crucial question, however, is whether this chilling effect is only incidental to the good faith enforcement of valid legislation or whether under the prevailing circumstances, it is the result of an impermissible invasion of protected freedoms.

Plaintiffs contend that the ordinance, both as it is written, and in its application, unconstitutionally restricts their rights of free speech, expression and assembly protected by the First and Fourteenth Amendments to the Constitution of the United States, and that this court has jurisdiction to enjoin its further enforcement pursuant to the provisions of 28 U.S.C. §§ 1331, 1343 and 2201, and 42 U.S.C. § 1988. The validity of the ordinance is defended by the city officials on the ground that any chilling effect on the exercise of First and Fourteenth Amendment rights which might result from good faith enforcement of this ordinance is over balanced by the interests of an organized society in insuring safety and convenience of all persons in the use of public ways and facilities and in the preservation of public order.

██ We are concerned here primarily with plaintiffs' contention that the ordi-

nance is unconstitutional as applied to their activities. The ordinance, on its face, is not void for overbreadth or vagueness, the two most common constitutional defects in legislation. If anything, the ordinance is overspecific in its regulation of constitutionally-protected activity, but easily conceivable circumstances may arise wherein the rights of conflicting interests must, in the interest of peace, be specifically defined. In Cunningham v. Ingram, No. WC 6630 (July 22, 1966), this court (Clayton, C. J.) issued a temporary injunction—admittedly the model for the ordinance under attack—which regulated in minute detail the manner in which marches and demonstrations might be conducted by Negroes in the Grenada, Mississippi, area. Violence erupted when certain members of the Negro community attempted to peacefully protest their grievances, and, as a result, they sought the aid of a federal equity court and were required, at least temporarily, to enjoy less than the full measure of their constitutional rights to free speech and assembly, in the interest of public order. In short, there was a "clear and present danger" of violence unless all mass assemblages for the purpose of public protest against unequal treatment of Negroes were strictly controlled. A highly restrictive ordinance, no less than an injunction, may well be the result of the pressures of the particular times, but it may withstand constitutional attack as to its application only so long as it "clearly and precisely delineates its reach in words of common understanding." Cameron v. Johnson, 390 U.S. 611, 616, 88 S.Ct. 1335, 1338, 20 L.Ed.2d 182, 187.

With respect to the attack upon the ordinance as to its application, we concern ourselves solely with § 1(f), the one hour notice requirement, since it is the only part of the ordinance plaintiffs are charged with having violated.

The contentions of the litigants call upon this court to determine the relative strengths of two conflicting interests: that of a municipality in regulating the use of its streets and other public places and of maintaining public order, and that of groups of people in assembling peaceably and petitioning that government for the redress of grievances, even though they be assembled in large numbers and advocate unpopular causes. The choice as to where, in a given context, the individual's freedom ends and the government's power begins is, as always, a delicate one since "the usual presumption supporting legislation is balanced by the preferred place given in our scheme to the great, the indispensable democratic freedoms secured by the First Amendment." Thomas v. Collins, 323 U.S. 516, 530, 65 S.Ct. 315, 322, 89 L.Ed. 430, 440 (1944).

The notice required to be given to the city police pursuant to § 1(f) must not only be given at least one hour in advance of any march, but must identify the points of origin and of destination, as well as the route to be taken and the approximate number of participants. The notice must also apprise the police department whether upon arrival at the point of destination the march will be concluded or whether mass-meetings, assemblages, demonstrations or related activities are planned to occur at that time and place and, if so, whether such activities will be conducted upon any public property.

The City of Holly Springs contends, in support of the constitutionality of the notice requirement, that it thereby exercises no discretion as to whether or not such marches, demonstrations and picketing shall take place, in that it requires no discretionary permit. It is argued that the advance notice is solely for the purpose of permitting the police to best perform their legitimate and necessary functions. Much is made by the city of the fact that the ordinance in no way limits what the protesters may say, but is addressed solely to the conduct of the marchers.

Plaintiffs concede that adequate police protection for marches is a legitimate end, but urge that First Amendment rights are violated since the

notice provision is employed to break up an existing peaceful march which, even without notice, is adequately patrolled, due to its peaceful nature. Plaintiffs maintain, in short, that, even though the notice provision is not so restrictive as a discretionary permit system, clearly unconstitutional under the holding of Cox v. State of Louisiana, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965), it suffers from the same constitutional defect, in that it is an impermissible prior restraint on First Amendment freedoms. We are constrained to agree with plaintiffs, and hold, therefore, that the notice provision acts as an unconstitutional prior restraint upon the exercise of First and Fourteenth Amendment rights. If the activities likely to occur during a given assembly are not such as to incite people to violence or threaten the security of community life, or to interfere with the orderly function of governmental authority, it is a constitutionally protected activity and may not be made unlawful by the mere failure of its participants to have given law enforcement officers advance notice of their plans.

■■■ The freedoms of speech and assembly protected by the First Amendment from infringement by Congress, are among the fundamental personal rights and liberties also protected by the Fourteenth Amendment from invasion by state action. Lovell v. City of Griffin, 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949 (1937). It is well settled that municipal ordinances adopted under state authority constitute "state action" and are within the prohibition of the Amendment. Raymond v. Chicago Union Traction Company, 207 U.S. 20, 28 S.Ct. 7, 52 L.Ed. 78 (1908); Cuyahoga River Power Company v. City of Akron, 240 U.S. 462, 36 S.Ct. 402, 60 L.Ed. 743 (1916).

We are not dealing with a case involving a regulation of pure speech; rather, we are confronted with one where protest takes the form of mass demonstrations on public streets and sidewalks. It has been stated in this connection that "those who desire to communicate their ideas by conduct, such as patrolling, marching and picketing on streets and highways, are in this respect in a somewhat different position from those who communicate their ideas by mere speech or written publication." Cottenreader v. Johnson, D.C., 252 F.Supp. 492, 498. Whether or not the activity sought to be restricted is pure speech or is speech mixed with action, however, the question in a particular case is still "[whether the controls exerted thereupon are such] as not to deny or unwarrantedly abridge the right of assembly and the opportunities for the communication of thought and the discussion of public questions immemorially associated with resort to public places." Guyot v. Pierce, 372 F.2d 658, 5 Cir. 1967; Cox v. State of New Hampshire, 312 U.S. 569, 61 S.Ct. 762, 85 L.Ed. 1049, 133 A.L.R. 1396.

■■■ Just as the state may not require advance disclosure of the identity of speakers at lawful public assemblies involving no grave or immediate danger to an interest the state is entitled to protect, Thomas v. Collins, supra, 323 U.S. at 539, 65 S.Ct. 315, there is no reason to require previous notice of an intention to conduct a peaceful assembly when there is no public danger, actual or impending, reasonably anticipated to result therefrom. It has been stated that "it was not by accident or coincidence that the rights to freedom in speech and press were coupled in a single guaranty with the rights of the people peaceably to assemble and to petition for redress of grievances." Thomas v. Collins, supra, at 323 U.S. 530, at 65 S.Ct. 323, at 89 L. Ed. 440. These rights, although not identical, are inseparable, and they are cognate rights. De Jonge v. State of Oregon, 299 U.S. 353, 57 S.Ct. 255, 81 L.Ed. 278. These rights united in the First Amendment's assurance, are given "a sanctity and a sanction not permitting dubious intrusion." Cantwell v. State of Connecticut, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213, 128 A.L.R. 1352; Thomas v. Collins, supra, 323 U.S. 516, 65 S.Ct. 315, 89 L.Ed. at 440.

■■ The claims of the City of Holly Springs have not been lightly dismissed, but have rather been outweighed by the rights of the individual to voice dissatisfaction with his government, whenever he so desires, as long as he remains peaceful. It is true that the city is a small one, with a population of approximately 7300 persons and a police force of only about 5 regularly employed city law enforcement officers, and in event of mass disorders, there might be considerable difficulty in maintaining peace. This, however, is no reason to deny, even in part, to the citizens of that city the right to assemble peacefully when public disorder is not threatened. It is the character of First Amendment rights and not that of the limitations of government which has greatest significance under our Constitution. Free speech may not be restricted on the mere possibility that some breach of the peace might occur at some time. We think the correct rule to be stated in Terminiello v. City of Chicago, 337 U.S. 1, pp. 4–5, 69 S.Ct. 894, p. 896, 93 L.Ed. 1131 (1949), as follows:

"A function of free speech under our system of government is to invite dispute. It may indeed serve its highest purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger. Speech is often provocative and challenging. It may strike at prejudices and preconceptions and have profound unsettling effects as it presses for acceptance of an idea. *That is why freedom of speech * * is * * * protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest.*" (Emphasis added)

The defendants have wholly failed to show that the ordinance was applied to stop the May 15 march because of an imminent threat of violence. In fact, the evidence bears out that plaintiff's assertion that the march itself was entirely peaceful, and that it took place under such circumstances as to indicate that there was no real basis for concern for the public safety.

There is always a policeman on duty in Holly Springs, and there was nothing about this particular demonstration that required extra police vigilance. The march which occurred on the evening of May 15, 1968, was not a long, circuituous one conducted during busy hours. It was a short journey over a route, of which the local law enforcement officers were apparently well aware in advance, because there were three officers waiting at the court square when the marchers arrived. In the space of approximately five minutes after the marchers assembled, some seventeen law enforcement officers arrived on the scene. County Sheriff Johnnie Taylor and members of the Mississippi Highway Patrol were also present.

Nothing in the history of any of the previous marches indicated that the police were required to have advance notice of such activities in order to protect the peace of the community. There were no arrests for any activity growing out of the marches during the entire month of April and the first half of May. Despite an occasional clogging of streets and sidewalks prior to the enactment of the ordinance, the city officials did not arrest anyone for violation of state statutes prohibiting such conduct.[1] Although sporadic acts of violence took place in the community during the earlier period immediately following the death of Dr. King, there was no indication that those who chose to *publicly* and *non-violently* protest their grievances were connected with them. In short, the entire series of marches conducted prior to May 15, 1968, was characterized by efforts on the part of the participants to abide by the law and by the presence of more than ade-

1. Mississippi Code Annotated § 2212 (1942 Recomp.) prohibits the obstruction of roads; and §§ 2089.5 and 2090.5 outlaw disturbance of the public peace.

quate numbers of law enforcement personnel at the scene of the marches.

Even though there might have been a rational concern on the part of the city officials by virtue of the large number of participants in the earlier marches, the march during which plaintiffs were arrested should clearly have given them little or no cause to be apprehensive. The May 15 march involved only 50 persons as compared with the marches of April 6 and May 12, on which occasions there were 500 and 200 participants respectively. It would seem that the city officials, in enacting, enforcing, and prosecuting under this ordinance, were motivated primarily by a desire to impede and, if possible, totally halt all organized civil rights marches within the corporate limits. Obvious manifestations of this attitude were the initial arrests of only the leaders of the march, as well as those of Robinson, Pegues and Young, who, although not actual participants in that evening's march, were prominent Negro leaders.

■ The exercise of the rights of free speech and free assembly cannot be made a crime, nor may those who seek to freely exercise those rights be criminally punished for failure to previously register their intentions with law enforcement officers, in absence of a situation involving clear and present violence, or threat thereof. Advance notice is impossible where the demonstration results from a spontaneous group desire, and, even where there is sufficient time to give the requisite notice, the requirement necessarily destroys the feeling of security from official restraint and deters potential marchers from participating. In short, the administration of a dosage of "preventive medicine" is impermissible in connection with First Amendment rights. These rights are susceptible of restriction "only to prevent grave and immediate danger to [an interest] which the State may lawfully

protect." West Virginia State Board of Education v. Barnette, 319 U.S. 624, 639, 63 S.Ct. 1178, 1186, 87 L.Ed. 1628, 1638, 147 A.L.R. 674.

■ Defendants strongly urge that in drafting the ordinance in question they had the right to use as a model the injunction issued by this court in Cunningham v. Ingram, supra. As earlier outlined, we think that the similarity between that injunction and the ordinance in question here inapposite due to the entirely different set of circumstances prevailing in the earlier case.

Moreover, an injunction must be specific in its terms, as required by Rule 65(d) of the F.R.Civ.P., which provides as follows:

"(d) Form and scope of injunction or restraining order. Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained."

■ The form and scope of restraining orders and injunctions must be such as to apprise the party enjoined of the course of conduct which is prohibited, and to avoid undue restraint on parties to the action or others affected by the restraint. Loose injunctive orders are neither easily applied nor strictly enforceable, and are apt to be oppressive. The specificity of conduct required to be outlined in an injunction, when removed from its own evidentiary setting, becomes a doubtful precedent for legislation affecting First Amendment freedoms.

■ Injunctive relief in this case does not fall within the limitations of 28 U.S.C. § 2283, the federal Anti-injunction Statute,[2] because the ordinance and the court prosecutions thereunder constitute a plain and obvious impermissible

2. 28 U.S.C. § 2283 provides as follows:
    "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly au-
thorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

prior restraint on First Amendment rights, Douglas v. City of Jeannette, Pa., 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324 (1942); Machesky v. Bizzell, 288 F. Supp. 295 (N.D.Miss.1968).

An order will be entered in accordance herewith.

### APPENDIX TO OPINION OF THE COURT

#### ORDINANCE

Regulating Peaceful Marching, Peaceful Picketing, and Peaceful Demonstrating Upon the Public Ways of the City of Holly Springs, Mississippi

BE IT ORDAINED BY THE MAYOR AND BOARD OF ALDERMEN of the City of Holly Springs, Mississippi, as follows:

SECTION 1: Peaceful marching shall be permitted upon the public ways of the City of Holly Springs, Mississippi, but subject to the following conditions, regulations and exceptions:

(a) Not more than one organized march shall be conducted or allowed to proceed at any one time in said City.

(b) Participants in marches shall obey tions given by a police officer of the said City or other peace officer which are not inconsistent with the terms of this all traffic signals and all traffic direc- ordinance.

(c) Participants in marches shall form in groups of not more than twenty (20) to each group and they shall maintain intervals between such groups of not less than twenty (20) feet. Individuals within such groups may form and walk in no greater numbers than two abreast, and intervals between the individuals shall be maintained at no less than one yard in any and all directions. Not more than one person for each twenty (20) marchers shall be permitted to walk outside of and abreast of such groups to serve as control personnel.

(d) All marches shall be conducted as nearly as possible to right hand edge of public streets, with care being taken by all participants to produce minimum interference with normal traffic.

(e) No singing, chanting or other conduct calculated to disturb the peace of homes adjacent to the route of march shall be engaged in by participants in any march which is conducted or permitted to proceed in or near a residential area after 7:30 o'clock, P.M., and prior to 7:30 o'clock, A.M.

(f) No march shall be conducted or permitted to proceed unless notice to the police department of the said City shall have been given by participants at least one hour prior to the beginning of the march. Such notice shall identify the point of origin, the point of destination, the route to be taken and the approximate number of participants in the march. Such notice shall also apprise the police department whether upon arrival at the point of destination the march and related activity will be concluded or whether mass-meetings, assemblages, demonstrations or related activities are planned to occur at that place and time and if so, whether such activities will be conducted upon any public property.

SECTION 2: Peaceful picketing shall be permitted upon the public ways of the City of Holly Springs, Mississippi but subject to the following conditions, regulations and exceptions:

(a) Participants in picketing activities shall form a single file column along the curb of public sidewalks so as to permit reasonably unimpeded ingress and egress to and from the premises along the streets upon which they picket. Such participants will not physically interfere with or obstruct the free movement of persons in and out of the places of business being picketed.

(b) Participants in picketing activities upon sidewalks of approximately four feet in width shall not carry any signs of other physical objects which are greater than eighteen inches in width. When such activities are conducted upon sidewalks of approximately eight feet or more in width, the width

of such signs or other physical objects shall not exceed twenty-four inches.

(c) Participants in picketing activities shall maintain intervals between individuals of no less than three yards.

(d) No picketing activities involving ten or more participants shall be conducted or permitted to proceed unless notice thereof shall have been given to the police department of the said City at least one hour prior to the beginning of such activity. Such notice shall appraise (sic) the police department of the location of the picket line and the approximate number of participants. When less than ten participants are engaged in picketing activities, no such notice shall be required.

SECTION 3. Other peaceful demonstrations shall be permitted upon the public ways of the City of Holly Springs, Mississippi, except that the participants in any mass-meetings, assemblages or other demonstrations which are conducted upon the public property other than the public ways of the said City, shall take adequate measures to insure that no damage or destruction occurs to public property, including public monuments, ornamental planting and grass upon the public lawns.

SECTION 4. If any paragraph, sentence or clause of this ordinance shall be held to be' unconstitutional or invalid, the same shall not effect any other part, portion or provision of this act, but such other part shall remain in full force and effect.

SECTION 5. That any person, firm or corporation who shall violate any provision of this ordinance shall be punished by a fine not to exceed Three Hundred Dollars ($300.00) or imprisonment for not more than ninety (90) days, or by both such fine and imprisonment. Each violation shall constitute a separate offense.

SECTION 6. This ordinance shall take effect and be in full force from and after its passage, such being required for the immediate and temporary preservation of the public peace, health and safety, and in order to control and regulate presently occurring demonstrations, picketing and marching, which are being so conducted as to place undue burdens upon the police officers and townspeople of the City of Holly Springs, which are threatening the maintenance of law and order within said City, and which are interfering with the free and normal use of the public ways of said City by vehicle traffic and pedestrians, and which are interfering with the peace of the residents of said City.

The foregoing ordinance was introduced in writing, made by Alderman Buford, and duly seconded by Alderman Brown, was read, then fully discussed and considered, first section by section and then as a whole. The motion was put to a roll call vote by the Mayor, with the result being as follows:

Alderman Brown voted "aye."

Alderman Buford voted "aye."

Alderman Hensley voted "aye."

Alderman Stewart voted "aye."

Alderman Rather voted "aye."

The motion having received the affirmative vote of all Aldermen present, there having been no Alderman absent, the Mayor then declared the motion carried and the ordinance adopted, on this the 10th day of May, 1968, during a regular, recessed, open meeting of the Mayor and Board of Aldermen of the City of Holly Springs, Mississippi.

SAM COOPWOOD, Mayor

Attest:

W. W. Newsom, City Clerk

(SEAL)

CERTIFICATE

I, the undersigned W. W. Newsom, hereby certify that as Clerk of the City of Holly Springs, Mississippi, I am the official custodian of the minutes of Mayor and Board of Aldermen of said City, and that the foregoing ordinance is a true, correct and complete copy of an ordinance duly adopted by the Mayor and Board of Aldermen of the City of

Holly Springs, Mississippi, on May 10, 1968, as shown and enrolled upon said official minutes.

This the 10th day of May, 1968.

(SEAL)

W. W. NEWSOM, Clerk
of the City of Holly Springs,
Marshall County, Mississippi