TACOMA RY. & POWER CO. v. PIERCE COUNTY et al.

PUGET SOUND POWER CO. v. SAME.

OLD COLONY TRUST CO. v. SAME.

(Circuit Court, W. D. Washington, W. D.   September 14, 1910.   On Petition
for Rehearing, September 30, 1910.)

Nos. 1,331, 1,332, 1,333.

1. TAXATION (§ 498*)—ASSESSMENT OF PROPERTY OF STREET RAILWAY—IN-
JUNCTION.
   In suits to enjoin the assessment of a tax on the property of a street
   railway on the ground of unfairness in the valuation of the corporate
   franchises, evidence examined, and *held* that complainants were not en-
   titled to relief.
   [Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 913–919; Dec.
   Dig. § 498.*
   Restraining collection of taxes because of excessive or unequal assess-
   ments or valuations, see note to Atchison, T. & S. F. Ry. Co. v. Sullivan,
   97 C. C. A. 16.]

2. TAXATION (§ 493*)—ASSESSMENT—EQUITABLE RELIEF.
   The most that can be required of a court of equity is to correct abuse
   by an invidious assessment, when it has been proved by clear evidence
   that an injustice has been done, having in view the assessment in its
   entirety.
   [Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 876–883; Dec.
   Dig. § 493.*]

On Petition for Rehearing.

3. TAXATION (§ 493*)—ASSESSMENT—EQUITABLE RELIEF.
   A taxpayer is not entitled to relief in equity, except upon condition
   of doing equity on his part, which requires payment of all the taxes
   assessed, or which should be assessed against him.
   [Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 876–883; Dec.
   Dig. § 493.*]

4. TAXATION (§ 459*)—ASSESSMENT—UNFAIR VALUATION.
   It is not fair to cast out an assessment of one or more items of a tax-
   payer's assets because of unfair valuation, when, in fact, the total as-
   sessment of all his property is not excessive.
   [Ed. Note.—For other cases, see Taxation, Cent. Dig. § 815; Dec. Dig.
   § 459.*]

In Equity.   Suits by the Tacoma Railway & Power Company, the
Puget Sound Power Company, and the Old Colony Trust Company
against the County of Pierce and others.   Dismissed.   Petition for re-
hearing denied.

James B. Howe and Hugh A. Tait, for complainant.

H. G. Rowland, Dix H. Rowland, and R. M. Davis, for Pierce
County and others.

C. M. Riddell, J. W. Quick, C. E. Dunkleberger, and E. B. Brock-
way, for City of Tacoma and others.

HANFORD, District Judge.   [1] The gist of the complaints in
these cases is alleged discrimination and unfairness in the assessment
of property in Pierce county for taxation for the year 1907, which, if

not corrected, will impose upon the Tacoma Railway & Power Company and the Puget Sound Power Company an undue proportion of the burden of taxation for state and municipal governments. The suits were commenced before the taxes for that year became due or payable, the object being to restrain the county officers from completing the tax roll as contemplated, but in the prolonged litigation the court has heard no application for a mandatory injunction to compel the officials to make a readjustment of values, or to list for taxation omitted property. The prayer for specific relief in the bill of complaint of the Tacoma Railway & Power Company is for a provisional injunction restraining the defendants from doing any further act to extend the tax complained of upon the assessment books and from doing any act to cloud the title, or to collect the alleged illegal tax during the pendency of the litigation, "and that, upon the final hearing and determination of this cause, said illegal tax and the assessment upon which it is based be canceled, and the defendants required to enter the cancellation thereof upon said assessment books." In the body of the bill, however, the complainant declares its readiness and willingness to pay as soon as it is payable the tax upon all of its property as assessed, except any of the tax upon the arbitrary assessment of its franchises, and that it is ready and willing to pay, and will pay, any amount upon the value of its franchises which is fair and equitable. It is probable that, if the bill had not contained this offer or a declaration of similar import, the litigation would have been ended by the court sustaining a demurrer to the bill. As the issues have been framed, the controversy relates to alleged unfairness in the valuation placed upon the corporate franchises; and the litigation seems to have been conducted upon a theory that the court must, in order to decide the disputed question, make an appraisement of the relative value of said franchises corresponding to the valuation of all other property included in the assessment of property in Pierce county for the year 1907, and of all property in the county omitted from the assessment roll which should have been included, and take notice of undervaluations.

The briefs filed in behalf of the complainants admit that the value of the physical property of the Tacoma Railway & Power Company as shown by the company's books was $5,262,392.17, and the estimated value by three different methods of computation ranges from $5,836,780 to $3,727,230, and that the total value of all of its property, including franchises, per the assessment made for taxation, was $2,038,441, and that the Puget Sound Power Company's property, including its franchises, was assessed for taxation upon a valuation of $1,401,428. These admissions are to be considered in connection with the material facts which in the briefs complainant's counsel claims to have established by the evidence, which are as follows:

"(1) On March 1, 1907, the Tacoma Railway & Power Company was a corporation created under the laws of New Jersey, doing business as a street railway and power company in Pierce county, Wash.

"(2) In 1902 Stone & Webster, of Boston, Mass., became the general managers of the company. The business of Stone & Webster consisted largely of reorganizing unsuccessful street railway and electric properties, financing them, and operating them. In 1907 they managed about 40 different com-

panies in various parts of the United States. The principal management and the financial operations were conducted in Boston, Mass.

"(3) On March 1, 1907, the par value of the capital stock of the railway company was $2,000,000, the bonded debt $1,500,000, bearing interest at the rate of 5 per cent. per annum. The outstanding notes of the company amounted to $1,696,698.47. Of these notes $1,578,441.59 bore interest at the rate of 6 per cent. and $118,256.38 bore interest at the rate of 5 per cent. per annum.

"(4) The railway company owns certain franchises authorizing it to operate upon certain streets of Tacoma and upon certain county roads in Pierce county, which franchises will expire approximately in 1935.

"(5) The railway company had been in existence for a number of years prior to March 1, 1907, but has never paid a dividend upon its stock.

"(6) The net earnings of the railway company for the year ending February 28, 1907, before deducting interest, amounted to $268,760.36. The operating expenses and taxes for the same period amounted to $587,613.94.

"(7) On March 1, 1907, and for several years prior thereto, the power company was a Washington corporation, with a capital stock of the par value of $3,000,000 subscribed and $1,000,000 issued. Its bonded debt was $3,236,-000. The bonds were guaranteed by the Seattle Electric Company. The Old Colony Trust Company was the trustee for the bondholders. The power company has never paid a dividend upon its stock.

"(8) On March 1, 1907, the power company in a few places had for short distances its poles upon county roads in Pierce county. It produced electric power, which it sold to public service corporations. It did no public service business itself, except in the town of Orting, from which public service business it derived a gross income of $2,200 a year and a net income of about $500 a year.

"(9) On March 1, 1907, there were hundreds of corporations located and doing business in Pierce county. These corporations consisted of banks, common carriers, and mercantile companies. These companies were assessed upon their physical properties only, no attention being paid in their assessment to their earnings, nor to the amount of their capital stock or indebtedness.

"(10) On March 1, 1907, the only assessments upon the franchises in Pierce county were of the following named companies, in the following named amounts:

| | |
|---|---|
| Northern Pacific Railway Company | $100,000 00 |
| Tacoma Railway & Power Company | 895.280 00 |
| Puget Sound Power Company | 934.728 00 |
| Tacoma Eastern Railroad | 25,000 00 |
| Sunset Telephone Company | 100,000 00 |
| Pacific Traction Company | 10,000 00 |
| Seattle & Tacoma Railway Company | 119.605 00 |
| Postal Telegraph & Cable Company | 6,270 00 |
| Tacoma Industrial Company | 1.000 00 |
| Western Union Telegraph Company | 15,000 00 |
| Ambrose Petrie Company | 5.000 00 |
| American District Telegraph Company | 6.000 00 |
| Tacoma Gas Light Company | 225,964 00 |
| Syndicate Heat & Power Company | 800 00 |
| Puget Sound Telephone Construction Company | 10,000 00 |
| Buckley Electric Company | 300 00 |
| Pacific Messenger Company | 5,000 00 |

"(11) The total assessment upon all franchises in Pierce county for the year 1907 was $2,459,947. Of this amount $1,830,008 was imposed upon the railway company and the power company. The railway company and the power company were also assessed upon their real estate. The railway company was also assessed in the sum of $1,025,769 upon its tangible personal property, and the power company in the sum of $466,700 upon its tangible personal property.

"(12) The total assessment in Pierce county for the year 1907 upon all personal property, tangible and intangible, was $12,534,311. Of this amount more than 25 per cent. was imposed upon the railway company and the power company.

"(13) The total assessment of all property, real and personal, in Pierce county for the year 1907, was $58,939,677. The railway company and the power company, in addition to being assessed upon their real estate, were assessed upon their personal property more than one-nineteenth of the total assessment of all property in Pierce county.

"(14) The taxing officials of Pierce county for the year 1907 know that on March 1, 1907, there were moneys belonging to individuals and corporations resident in Pierce county on deposit in the banks of Pierce county, subject to check, and intentionally omitted to assess such moneys. They intentionally assessed bank stock at 60 per cent. only of the amount of the capital, surplus, and undivided profits of the banks, less the assessed value of the real estate held by the banks.

"(15) The taxing officials of Pierce county for the year 1907 intentionally omitted to assess any intangible property in Pierce county, except the intangible property mentioned in paragraph 10 of this brief.

"(16) The taxing officials of Pierce county for the year 1907 adopted two methods for assessing the property of street railway corporations and electric light and power corporations. One method was to capitalize the net earnings before deducting interest charges at 6 per cent., and fix the value of the whole property at the amount so produced, deduct from such amount the assessed value of the tangible property, and take as the value of the franchise the amount remaining. The other method was to place a valuation upon the stock and indebtedness of the company, deduct from such amount the assessed value of the tangible property, and take the result as the value of the franchise.

"(17) Other corporations and individuals were not so assessed, but were assessed upon tangible property.

"(18) This plan was carried out in King and Pierce counties in the year 1907, but not elsewhere.

"(19) The track mileage of the railway company in Pierce county on the 1st of March, 1907, was approximately 101 miles. The track mileage of other companies in Pierce county at the same time was approximately 216 miles.

"(20) The track mileage of steam railroads in the state of Washington on March 1, 1907, exceeded 3,000 miles. The net earnings of such railroads in the state of Washington exceeded $10,000,000. The proportion of the capital stock and indebtedness of such railroad companies attributable to Washington, based upon the mileage of such companies in Washington, exceeded $137,000,000, and that attributable to Pierce county, based upon the mileage in Pierce county, amounted approximately to $11,000,000. The net earnings of the Northern Pacific Railway company attributable to operations in Pierce county, based on mileage, amounted approximately to $638,700.

"(21) The total assessment of all franchises in the state of Washington, as equalized by the state board of equalization for the year 1907, amounted to $10,278,885, all of which was imposed upon corporations in King and Pierce counties, with the exception of $42,635 imposed upon the franchises of other corporations outside of King and Pierce counties.

"(22) The power company was also assessed in King county upon its franchise in the sum of $139,652. The power company was not doing any public service business in King county.

"(23) The power company was assessed upon its franchise in Pierce county nearly 20 times as much as all the steam railroads were assessed upon their franchises in the state of Washington. The railway company was assessed upon its franchise in Pierce county about 18 times as much as all the steam railroads were assessed upon their franchises in the state of Washington.

"(24) The securities of both companies have a value in the state of Massachusetts, based upon the management and financial standing given to the

·companies by Stone & Webster of Boston, Mass., which value does not exist in the state of Washington.

"(25) The companies in the year 1907 applied to the county board of equalization for relief, but all relief was denied them.

"(26) The assessment is a cloud upon· the 'title to the real estate of the ·companies. If the tax should be paid, it would be distributed, and the companies would be forced into a multiplicity of suits. The companies are willing to pay any tax upon a fair assessment of their properties. The method of assessment pursued by the taxing officials of Pierce county resulted in ·an unfair, unequal, and unjust assessment of the companies' entire property, and was illegal, and should be canceled."

Assuming the foregoing admissions and assertions to be a fair statement of the facts proved, the case must necessarily fail for lack ·of necessary proof to enable the court to make the appraisement required. It is obvious that the court cannot make a finding as to the relative value of the complainant's franchises with relation to the relative value of the other taxable property of the county, without evidence affording definite information as to the value of all the other property to which the value of the franchises must be correlated. To accomplish the task imposed upon the court, it would be necessary to revise the entire assessment roll and to acquire sufficient knowledge with reference to unassessed property to list and appraise all of it, or by some simpler method ascertain at least the minimum value of all the assessable property of the county and the actual or maximum value of the complainant's franchises.

The court declines to render a decree based upon mere conjecture, or an arbitrary appraisement similar to an award of damages for a personal injury, and declines to undertake the task of supervising the assessors' work with respect to their methods of ascertaining values.

[2] It is impossible to make assessments of different kinds of property exactly equal. Neither assessors nor courts can do better than to approximate equality and justice. The most that can be required of a court of equity is to correct abuse by an in·· 'ious assessment, when it has been proved by clear evidence that an ·justice has been done, having in view the assessment in its entirety. If the assessment of a complainant's property as a whole is not excessive, he can have no ground for demanding equitable relief.

In the case of Raymond v. Chicago Traction Co., 207 U. S. 20, 28 Sup. Ct. 7, 52 L. Ed. 78, the Supreme Court affirmed a decision by Judge Grosscup in the case wherein several corporations complained of injustice in the valuation of the capital stock and franchises of each, respectively, for purposes of taxation. The court made a computation of the value of capital stock and franchises by capitalizing the net earnings on a 6 per cent. basis, and subtracting therefrom the value of the physical property owned by each corporation, with an allowance for deterioration and equalizing the difference with the assessed value of other property. That was reasonable and right in that case because under the law the capital stock and franchises had to be assessed and taxed separately from tangible property. The cases now to be decided are different because the equitable rights of the complainants can only be ascertained by the result of a canvass of the assessment of their property as an entirety.

I have tried to work out a solution of the problem involved in these cases with a view to their determination on the basis of approximate justice by making some mathematical calculations, using the most reliable data found in the evidence. Assuming the net earnings for the year preceding the date of the assessment for 1907 to be 6 per cent. thereof, the total value of the Tacoma Railway & Power Company's assets, including its franchises, would be $4,479,335. Then deducting 10 per cent. of that value for deterioration and an additional 40 per cent. from the remainder to equalize the appraisement with other assessed property, the last remainder, amounting to $2,418,840, is the assessable value of the railway company's property, which amount is in excess of the appraisement complained of, including its franchises.

According to the testimony of Mr. Frank Dabney, assistant treasurer of the Puget Sound Power Company, the value of that company's property in Pierce county subject to taxation, after deducting $500,000 from the amount invested for deterioration, was $2,700,000, and 60 per cent. of that amount is $1,620,000, which is the assessable value thereof, and exceeds the amount of the assessment complained of, including the franchise. Having no better data for making any computation, I must conclude that the averments of injustice in the complainant's bills are not well founded, and my conclusion is that the equity of the cases is with the defendants.

Therefore the court directs that decrees be entered dismissing each of the suits, with costs.

## On Petition for Rehearing.

[3, 4] After reading the petition for a rehearing, the court adheres to the opinion that a taxpayer is not entitled to relief in equity, except upon condition of doing equity on his part. That requires payment of all the taxes assessed, or which should be assessed, against him, and it is not equitable to cast out an assessment of one or more items of a taxpayers' assets, because of unfair valuation, when, in fact, the total assessment of all of his property is not excessive.

The petition does not indicate a misunderstanding on the part of the court of any particular fact, and the decision rendered is in accordance with my belief respecting the principles applicable.

An order will be entered denying the petition.