### BANK OF ARIZONA et al. v. HOWE et al. (two cases).

(District Court, D. Arizona. October 18, 1923.)

Nos. 58, 60.

1. **Taxation ☞608(9)—Jurisdiction of equity to enjoin collection of tax.**

Where by the law of the state a county treasurer is required to distribute taxes collected by him among the municipalities and other subdivisions entitled to the same, a taxpayer against whose property an excessive and illegal tax has been levied is without adequate remedy at law after payment of such tax, and may maintain a suit in equity to enjoin its collection.

2. **Taxation ☞608(4)—Fraudulent assessment ground of equity jurisdiction.**

A court of equity has jurisdiction of a suit to enjoin collection of taxes, based on what is alleged in the bill to have been a fraudulent assessment.

3. **Courts ☞328(3)—In suit to enjoin collection of illegal tax, jurisdictional amount is amount of tax.**

In a suit to enjoin collection of a tax based on an illegal assessment, the amount of tax is the amount in controversy for jurisdictional purposes.

4. **Courts ☞282(3)—Bill to enjoin tax held to state federal question; "arising under Constitution."**

A bill alleging that complainant's property was intentionally and systematically assessed by a different method than that applied to other similar property, which resulted in the imposition of an excessive tax, and in depriving complainant of its property without due process of law and denying it the equal protection of the laws, states a cause of action arising under the Constitution of the United States, which gives a federal court jurisdiction, regardless of the citizenship of the parties.

5. **Constitutional law ☞213, 254—Courts ☞282(3)—Systematic inequality in assessment may violate constitutional rights, though the action is taken under valid statute.**

The due process and equal protection clauses of the Constitution apply, not only to state Constitutions and statutes, but to the action of administrative officers or boards, and discrimination in taxation effected by a systematic inequality of assessment may violate such provisions and give jurisdiction to a federal court to grant relief, though the action is taken under a constitutional and valid statute.

**6. Taxation ⬤⟹40(3)—Method of assessment directed by state tax commission held illegal; "full cash value."**

Const. Ariz. art. 9, §§ 1, 11, provide that "all taxes shall be uniform upon the same class of property," and that the method of assessing, equalizing, and levying taxes shall be such as may be prescribed by law. Civ. Code Ariz. 1913, par. 4849, provides that "all taxable property must be assessed at its full cash value," defined to mean the price at which the property would sell if voluntarily offered for sale by the owner. *Held*, that the state tax commission, authorized to exercise general supervision over the administration of the assessment and tax laws, had no lawful authority to fix the value of the property of a particular bank by capitalizing its average net earnings for the preceding five years at an arbitrary rate, and to direct the assessor to assess it at such value.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Full Cash Value.]

**7. Taxation ⬤⟹608(5)—Equitable relief from illegal assessment.**

Where the property of other banks was not assessed on the same basis as that of complainant bank, such action amounted to a fraudulent discrimination, which rendered the assessment void, and entitled the bank to equitable relief.

**8. Taxation ⬤⟹608(5)—Right to injunction against illegal method of assessment.**

The application by taxing authorities of the same illegal and discriminatory method of assessment of the property of a bank for a second year evidences an intentional and systematic violation of the constitutional rights of the bank, which entitles it to relief by injunction.

**9. Taxation ⬤⟹386(1)—Bank held not entitled to withhold from assessment a reserve to cover possible bad debts.**

A bank *held* not entitled to withhold from assessment a part of its undivided profits as a reserve to make good possible losses from bad debts which it might never incur.

In Equity. Suit by the Bank of Arizona and the Bank of Arizona, a corporation, trustee, against Charles R. Howe, Frank Luke, and E. A. Hughes, members of the Tax Commission and the Board of Equalization of the State of Arizona, C. E. Gentry, County Assessor of the County of Yavapai, State of Arizona, F. E. Smith, Treasurer and ex officio Tax Collector of the County of Yavapai, State of Arizona; and John L. Sullivan, County Attorney of the County of Yavapai, State of Arizona. On motion to dismiss bill and submission on the merits. Motion to dismiss denied, and permanent injunction granted.

Alpheus B. Favour and Arthur G. Baker, both of Prescott, Ariz., for complainants.

John W. Murphy, Atty. Gen., of State of Arizona, Alexander B. Baker, of Phœnix, Ariz., and Robert McMurchie, of Prescott, Ariz., for defendants.

JACOBS, District Judge. The complainant, the Bank of Arizona, is a corporation organized under the laws of the state of Arizona, doing a banking business in the town of Prescott, in Yavapai county, Ariz., and the defendants Charles R. Howe, Frank H. Luke, and E. A. Hughes are members of and constitute the tax commission and board of equalization of the state of Arizona, and the defendants C. E. Gentry, F. E. Smith, and John L. Sullivan were, at the time of the commencement of this suit, respectively, county assessor, county treasurer

and ex officio tax collector, and the county attorney of Yavapai county, state of Arizona. Prior to the year 1921, it had been the custom of the county assessor of Yavapai county to levy an assessment of taxes against the property of the banking institutions of the county, including the complainant, for state, county, municipal, and school district purposes, on a valuation based upon the capital stock, surplus, and undivided profits on hand on the last day of the year preceding that for which the tax was levied.

On the 1st day of February, 1921, the complainant verified and returned to the assessor of Yavapai county its statement of taxable property, which showed capital stock $50,000, surplus $250,000, and undivided profits none, making a total of $300,000. Included in this surplus of $250,000 was a valuation on the real estate of plaintiff, fixed at $55,102.30. It also showed a fund reserved to cover possible losses carried in cashier's checks, amounting to $6,423.22. The county assessor increased the valuation of complainant's real estate $16,302.00, which raised the value of the real estate to $71,405.30, and which increased the valuation of complainant's property to the sum of $322,-725.92 for the year 1921.

In the year 1922 the complainant caused to be verified and returned to the assessor of Yavapai county its statement of all taxable property for that year, showing capital $50,000, surplus $250,000 (which included a valuation of its real estate, furniture, and fixtures of $56,021.-63), undivided profits none. It also showed a fund reserved to cover possible losses from bad loans carried in cashier's checks amounting to $19,203.08. The assessor raised the valuation on the real estate and personal property $15,383, and assessed plaintiff's property for the year 1922 at $315,383. The assessor did not fix the valuation of complainant's property for the year 1921, but fixed the valuation of its property in the year 1922 in accordance with complainant's return, after increasing the valuation on its real estate and personal property as above indicated, and after completing the assessment roll delivered the same to the clerk of the board of supervisors of said county, thereafter to be considered and passed upon by the board of supervisors, sitting as a county board of equalization, and the same was returned to the board of supervisors, and thereafter the clerk of said board made and filed with the state tax commission and board of equalization an abstract of said assessment roll, as required by law.

In Yavapai county there are seven banks—the Prescott State Bank at Prescott, the Yavapai Savings Bank at Prescott, Campe Verde State Bank at Camp Verde, Mayer State Bank at Mayer, Commercial Trust & Savings Bank at Prescott, the Bank of Jerome at Jerome, and the Bank of Arizona, the complainant, at Prescott, Ariz. On March 18, 1921, defendant Arizona State Tax Commission issued a written order to the defendant C. E. Gentry, county assessor of Yavapai county, as follows:

"Dear Sir: After consideration of the annual bank statements, the commission has fixed the valuation of the following banks in your county by adding together capital stock, surplus and undivided profits:

| Name. | Address. | Valuation. |
|---|---|---|
| Prescott State Bank | Prescott | $391,208.92 |
| Yavapai County Savings Bank | Prescott | 158,168.11 |
| Camp Verde State Bank | Camp Verde | 36,968.07 |
| Mayer State Bank | Mayer | 30,412.26 |

"In making the assessments on the above banks, you will bear in mind that you are to add to the above valuation the difference between the valuation of the real estate, improvements, and personal property as found by you and the valuations of these items as shown by the bank's statement, where such valuation is carried at less than the real market value. The commission has found the following valuations by capitalizing the average annual net income for a period of five years at 12½ per cent.:

| Name. | Address. | Valuation. |
|---|---|---|
| The Bank of Arizona | Prescott | $452,506.61 |
| Commercial Trust & Savings Bank | Prescott | 166,606.51 |
| The Bank of Jerome | Jerome | 113,622.54 |

"When your valuation, after deducting the valuation of real estate, improvements, and personal property at its real market value, exceeds the valuation as found by the commission, you will in every such case use your own valuation for the assessment of the banks in your county. Kindly advise your valuation covering real estate, improvements, and personal property of each bank in your county.

"Very truly yours, Clarence L. Standage, Secretary State Tax Commission."

In accordance with these instructions, the assessor applied the method of fixing valuation as directed to the first four banks mentioned in the order by adding capital stock, surplus, and undivided profits, and applied the other or different method as directed, and assessed the three remaining banks, including complainant, at the valuation set out in said order, by capitalizing the average annual net income for a period of five years at 12½ per cent., as follows: The Bank of Arizona, complainant, $452,505. The tax directed to be levied by the state board of equalization and as actually entered upon the tax books of the county by the county assessor for the year 1921 amounted to the sum of $12,372.60, and the tax levied against the complainant for the year 1922 amounted to the sum of $8,893.02 based upon a valuation of $396,742.

The complainant then protested and objected to the said pretended valuation of its property as being wrongful, excessive, unlawful, inequitable, unjust, arbitrary, illegal, fraudulent, discriminative, and unconstitutional, and protested and objected that the said pretended valuation was not the cash value, and was not the cash value determined by a uniform method followed in finding the cash value of other banks of the same class, and followed also by the said county assessor in determining the cash value of complainant's property, but that said valuation was wholly illegal and excessive, and determined not as cash value, but by applying and following a wholly different, illegal, unconstitutional, and discriminatory method of valuation, systematically applied to complainant, and not to other banks as a class, and resulting in an increased valuation far in excess of the full cash value. This protest was disregarded by the board and no evidence taken to determine actual cash value.

After said assessment for the year 1921 was made as aforesaid, complainant filed its bill in equity in this court, which appears upon the docket as E–58, in which complainant contends that the pretended

valuation of its property as ordered and made by the board of equalization and extended on the county assessment roll was wrongful, unlawful, unconstitutional, excessive, discriminative, and arbitrarily made, and made in contravention and in violation of the requirements of the Constitution and laws of the state of Arizona, and that it deprived complainant of its property without due process of law and the equal protection of the laws, and was in violation and contravention of the Fifth and Fourteenth Amendments to the Constitution of the United States, and asked for an injunction restraining defendants from enforcing collection of the taxes. After assessment of complainant's property for the year 1922 in accordance with the order of the tax commission, complainant filed its bill in equity, which is entered on the docket as E–60, raising the same questions as to the taxes of 1922 as were set forth and contained in the bill of complaint in E–58, and asked for an injunction restraining the collection of the taxes.

Temporary restraining orders were issued in each of these cases, restraining the defendants, their successors, deputies, agents, assistants, etc., from in any way or manner listing or entering upon the delinquent tax lists or back-tax books of the county any taxes for said years 1921 and 1922 as assessed by said defendant, or from in any way or manner attempting to enforce or collect any of said taxes against complainant or its property. In case E–58, complainant made a tender of $8,822.90, and deposited this sum in this court to be paid to the county treasurer in full payment of its taxes for the year 1921, and tendered and deposited in this court the sum of $5,561.13 to be paid to the said county treasurer in full payment of its taxes for the year 1922.

In each of these cases, the defendants appeared and moved the court to dismiss the bill, on the grounds that the court had no jurisdiction of the subject-matter; that the jurisdictional amount of $3,000 was not involved; that there was no diversity of citizenship between the plaintiff and the defendants; that no federal question was involved; that complainant had adequate remedy at law; that there was an improper joinder of parties plaintiff in the bill. The motions to dismiss were denied. Defendants answered in each case, and the court ordered the two cases consolidated and set down for trial on the 13th day of July, 1923.

At the trial, the evidence showed that, in addition to the assets reported by the bank for the year 1921, the bank held cashier's checks on December 31, 1920, amounting to $136,273.95; that of this sum $50,-748.67 was represented by bona fide customers' checks issued in the regular course of business; that of the remaining fund, $35,877.36 represented by cashier's checks was reserved for the payment of taxes in the year 1921, and $49,647.92 was reserved for possible losses from bad debts, which, according to the testimony of the vice president of plaintiff, the bank may never sustain. The evidence further showed that, in addition to the assets reported by the complainant for 1922, the bank had on hand on December 31, 1921, cashier's checks representing the sum of $126,781.08; that of this sum $43,002.60 were bona fide customers' checks issued in the regular course of business, and of the remaining fund $23,168 was reserved for the payment of taxes in the

year 1922, and $60,610.48 was reserved to cover possible losses from bad debts, which, according to the testimony, the bank may never sustain.

[1] I will take up the grounds of the motion to dismiss in the order in which they are stated. The first ground is "that this court has no jurisdiction of the subject-matter." By the provisions of chapter 37, Session Laws 1917 of Arizona, the county treasurer is required to pay over to the treasurer of each city, town, or other municipal corporation in his county on the 1st day of each month all moneys in his hands collected for the previous month on taxes for each such city, town, or other municipal corporation, and similar provision is made for payment of delinquent taxes, interest, costs, etc. This tax having been paid, the complainant, in order to obtain complete relief against an unlawful levy and assessment, would be compelled to institute actions for the recovery of the money unlawfully collected (assuming that such actions are authorized by law, which is doubtful) against the state, county, municipality, and several school districts within the county to which the money had been apportioned and paid. This would necessitate a multiplicity of suits. In the case of Raymond v. Chicago Traction Co., 207 U. S. 39, 28 Sup. Ct. 14 (52 L. Ed. 78, 12 Ann. Cas. 757), it is said:

"In the case at bar it is averred that it is the duty of the collector, having received the money on his warrant, to pay the sum so received in the proportions designated in his tax books to the city treasurer of the city of Chicago, the county treasurer of the county of Cook, treasurer of the sanitary district, and other officers and authorities entitled to receive the same, and if the plaintiff instituted suit to recover back the taxes so paid to the town or county collector he would be obliged to bring separate suits against each one of the several taxing bodies receiving its proportionate share of the tax, thereby necessitating a multiplicity of suits, and the proportion of the tax which would go to the state of Illinois could not be collected back by any legal proceeding whatsoever; and if repayment could be compelled from the city of Chicago and other taxing bodies, such repayment would not cover the cost, including commissions deducted for the collection of the tax, and in that way it was averred that the appellee would be subjected to great and irreparable injury, for which there was not a complete or adequate remedy at law. * * * Upon the whole, we think it is apparent that no adequate remedy at law exists in this case, and that the judgment enjoining the collection of the balance of the tax levied against the appellee, above that which has been paid under the direction of the Circuit Court, must be affirmed."

[2] It is also alleged in the bill that the defendants, in assessing complainant's property in the manner in which it was done, acted willfully, arbitrarily, fraudulently, systematically, unlawfully, and in disregard of the requirements that property must be taxed upon its ad valorem basis and cash value, and that the assessment increased complainant's property en masse, without finding the cash value of the various lots, pieces, or parcels, items, or classes of complainant's property, so that it is impossible for complainant to ascertain the intended assessed valuation of any part, piece, parcel, or item of its said property, and, as a result thereof, the complainant is wholly deprived of its legal rights as specified in paragraph 4829, Revised Statutes of Arizona of 1913, and elsewhere in said statutes, to pay the taxes, interest, and costs upon any of its tracts of land or town lots, or to save the same

from execution and forced sale for the collection of delinquent taxes thereon. It will be seen that the bill alleges fraudulent action' on the part of the defendants in making the assessment. In the case of Johnson v. Wells Fargo & Co., 239 U. S. 243, 36 Sup. Ct. 66 (60 L. Ed. 243) this being a suit to enjoin the collection of taxes fraudulently and unlawfully assessed, it is said:

"The contention is made that there was no ground for equity jurisdiction, and that therefore the bill should be dismissed. This court has frequently held that a bill will not lie in the federal courts to enjoin the collection of state taxes where a plain, adequate and complete remedy at law has been given to recover back illegal taxes and the attack upon the assessment is based upon the sole ground that the same is illegal and void. * * * But in the present case it was alleged, not only that the assessment was unwarranted by the law, but that the manner of making the assessment amounted to fraud upon the constitutional rights of the express companies, or such gross mistake as would amount· to fraud, thus averring a distinct and well recognized ground of equity jurisdiction."

The case at bar comes within the rule thus announced.

[3] The second and third grounds stated in the motion each go to the question of the jurisdictional amount involved. The total amount of the tax levied against complainant's property for the year 1921 and involved in case E–58 is $12,372.60, and the amount levied against complainant's property for the year 1922 and involved in case E–60 is ·the sum of $8,893.02. The bill alleges that the assessment of complainant's property and the tax levied against it is wholly unlawful and void, and asks that the defendants be enjoined from enforcing collection of the same or any part thereof. It will thus be seen that the validity of the entire tax is questioned, and the whole tax is involved and in controversy in this case. The law seems to be well settled that in tax cases of this character the amount of the tax is the criterion where any amount above $3,000 is regarded as requisite, and the amount involved in each of these cases is in excess thereof. Colvin v. Jacksonville, 158 U. S. 459, 15 Sup. Ct. 866, 39 L. Ed. 1053; Woodman v. Ely (C. C.) 2 Fed. 841; American Fertilizer Co. v. Board (C. C.) 43 Fed. 610, 11 L. R. A. 179.

[4] The next ground of the motion is:

"That there is no diversity of citizenship between the plaintiff and defendants or any of them, and that no federal question is involved or at issue."

It is alleged that the unlawful levy amounted to a discrimination against complainant; that the method used in fixing the valuation of its property (capitalization of its annual net earnings) was a different method than that used in fixing the valuation of others of the same class and resulted in fixing the valuation far in excess of the actual cash value of its property and that this method was used against complainant arbitrarily, intentionally, and systematically; that it is not authorized by the Constitution and laws of the state of Arizona, and that it deprives complainant of its property without due process of law and of equal protection of the law, and is violative of the Fifth and Fourteenth Amendments to the Constitution of the United States.

It would seem from this that a federal question was fairly stated. Where federal jurisdiction is invoked under the "due process" and

"equal protection" clauses of the Fourteenth Amendment to the Constitution of the United States, the want of diversity of citizenship will not deprive the court of jurisdiction. Section 24, Judicial Code (Comp. St. § 991); Greene v. Louis & Interurban R. R. Co., 244 U. S. 502, 37 Sup. Ct. 673 (61 L. Ed. 1280, Ann. Cas. 1917E, 88). "Discrimination in taxation, effected by systematic inequality of assessment, may violate the Fourteenth Amendment." Keokuk Bridge Co. v. Salm, 258 U. S. 122, 42 Sup. Ct. 207, 66 L. Ed. 496.

[5] The next ground of the motion is:

"That it appears upon the face of the complaint that no statute or action of the state of Arizona is complained of, and therefore no federal question is involved."

In speaking of this question, the Supreme Court, in the case of Greene v. Louis & Interurban R. R. Co., above cited, 244 U. S. 507, 37 Sup. Ct. 677 (61 L. Ed. 1280, Ann. Cas. 1917E, 88), said:

"The principle is not confined to the maintenance of suits for restraining the enforcement of statutes which, as enacted by the state Legislature, are in themselves unconstitutional. Reagan v. Farmers' Loan & Trust Co., 154 U. S. 362, 390, was a case, not of an unconstitutional statute, but of confiscatory, and therefore unconstitutional, action taken by a state commission under a constitutional statute. The court, by Mr. Justice Brewer, said: 'Neither will the constitutionality of the statute, if that be conceded, avail to oust the federal court of jurisdiction. A valid law may be wrongfully administered by officers of the state, and so as to make such administration an illegal burden and exaction upon the individual. A tax law, as it leaves the legislative hands, may not be obnoxious to any challenge, and yet the officers charged with the administration of that valid tax law may so act under it in the matter of assessment or collection as to work an illegal trespass upon the property rights of the individual.' In Raymond v. Chicago Union Traction Co., 207 U. S. 20, 38, the court upheld the right of action in a federal court to restrain the collection of taxes that had been assessed at a different rate and by a different method from that employed with respect to other taxpayers of the same class, in defiance of the provisions of a constitutional statute that required equalization, and also in denial of the equal protection of the laws within the meaning of the Fourteenth Amendment."

The next ground is:

"That it appears from the face of the complaint that the acts complained of are the acts of officers and agents of the state of Arizona and the county of Yavapai done and performed contrary to and in absolute violation of the laws and Constitution of the state of Arizona, and therefore no federal question is involved."

The case of Greene v. Louis & Interurban R. R. Co., above cited, fully answers this objection.

The next ground is:

"That there is insufficiency of facts alleged in the complaint to constitute a valid cause of action in equity against the defendants or any of them."

This objection has been fully answered.

The next ground is "that the plaintiff has an adequate remedy at law." This has been answered in treating the first ground of the motion, as well as the next ground, "that it does not appear upon the face of the complaint that said plaintiffs, or either of them, are entitled to the issuance of an injunction, or are entitled to any equitable relief whatever as against the defendants."

The last ground of the motion is "that there is an improper joinder of parties plaintiff in said complaint." It will be noted that the Bank of Arizona and the Bank of Arizona, trustee, are complainants. It is alleged in the complaint, and the evidence shows, that the Bank of Arizona and the Bank of Arizona, trustee, are one and the same corporation; that it acts as trustee for its shareholders, and it appears that the bank is designated as trustee by the state tax commission merely for its own convenience in designating and segregating the taxes. There is no improper joinder of parties plaintiff. This disposes of the motion to dismiss.

[6, 7] I now come to the question of the validity of the tax levy. By section 1 of article 9 of the Constitution of Arizona it is provided:

"All taxes shall be uniform upon the same class of property within the territorial limits of the authority levying the tax, and shall be levied and collected for public purposes only."

Section 11 of article 9:

"The manner, method and mode of assessing, equalizing and levying taxes in the state of Arizona shall be such as may be prescribed by law."

Section 12 of article 9:

"The law-making power shall have authority to provide for the levy and collection of license, franchise, gross revenue, excise," and other specific taxes.

Paragraph 4849 of the Revised Statutes of Arizona of 1913 provides:

"All taxable property must be assessed at its full cash value. The term 'full cash value,' whenever used in this act, shall mean the price at which property would sell if voluntarily offered for sale by the owner thereof, upon such terms as such property is usually sold, and not the price which might be realized if such property was sold at a forced sale."

By the terms of paragraph 4820, Revised Statutes of 1913, a state board is created, to be known and designated as the state tax commission, composed of three members. To this tax commission is granted the power to conduct a wide scope of investigation, and by subdivision 1 of paragraph 4829, Revised Statutes, the board is given authority—

"to have and exercise general supervision over the administration of the assessment and tax laws of the state, over city, town, and county assessors, over county and city boards of equalization, boards of supervisors, and all local boards of levy and assessments, to the end that all assessments of property of every class, kind, and character, real, personal and mixed, be made at its full cash value; and to require assessors and county boards of equalization to assess all property of every class, kind, and character, at its full cash value."

By subdivision 7 of said section power is conferred upon the tax commission—

"to summon witnesses from any part of the state to appear and give testimony, and to compel said witnesses to produce all records, maps, drawings, books, invoices, papers, and documents relating to any subject or matter which the said commission shall have authority to investigate or determine."

By subdivision 19 of said section, the tax commission is authorized—

"to investigate (and the said commission shall thoroughly investigate) all complaints which may be made to it of illegal, unjust, or excessive taxation,

and said commission shall endeavor to ascertain to what extent, and in what manner, if at all, the present system is unequal or oppressive."

It will be seen by the Constitution and laws of the state that taxes must be uniform upon the same class of property and that all taxable property within the state must be assessed at its full cash value; that cash value is defined by statute to mean the price at which the property would sell if voluntarily offered for sale upon such terms as such property is usually sold. I am unable to find any authority given the taxing officials to tax property at other than its full cash value.

In the year 1921, before the assessor had made the original assessment of complainant's property, the state tax commission issued its order of March 18, 1921, to the county assessor of Yavapai county, directing him to base the value of complainant's property for that year upon the capitalization of average annual net earnings covering a period of the proceeding five years, which the assessor proceeded to do. In the year 1922 the assessor fixed the valuation of complainant's property and returned the same to the board of supervisors, and an abstract of the tax roll was furnished to the state tax commission, and the tax commission issued its order, directed to the board of supervisors of Yavapai county, sitting as a board of equalization, to increase the valuation of complainant's property, and this increase was based upon the capitalization of average annual net earnings covering a period of the preceding five years. The complainants protested against the valuation as fixed by the commission; but the tax commission, without giving complainant an opportunity to furnish evidence of actual value of its property, refused to change or modify its order, and the valuation of complainant's property was allowed to stand as fixed in said orders. The property of four banking institutions in Yavapai county was valued on the basis of capital, surplus, and undivided profits. Three of the banks of that county, including complainant, were assessed on a valuation based on capitalization of average net earnings covering a period of five years.

By its order of March 18, 1921, it is apparent that the commission based the valuation of complainant's property wholly upon the average net earnings arbitrarily capitalized at 12½ per cent. What prompted the commission to capitalize at 12½ per cent., instead of some other percentage, is not pointed out. That this method was applied against complainant arbitrarily, intentionally, and systematically is quite manifest from the language of its order of March 18 and from the fact that again in 1922 the same method was used.

[8] In the case of Wells Fargo & Co. v. Johnson. 214 Fed. 188, 130 C. C. A. 536, it is said:

"Finally counsel for the defendant argue, as we understand their brief, that although the law under which the assessments were made is unconstitutional, and the assessments and taxes are void, still the plaintiffs are entitled to no injunction against their collection: * * * (3) Because the plaintiffs have an adequate remedy at law; but this is the second time this board has made in the same way unlawful assessments of the property of these plaintiffs which effect an unjust and unconstitutional discrimination in taxation against them and their property. Its action has been systematic and repeated, and a systematic, repeated, continuing violation of the Con-

stitution or the law to the injury of a plaintiff, like a continuing trespass, presents ample reason for an injunction against its continuance."

In the case of Raymond v. Chicago Traction Co., 207 U. S. 36, 28 Sup. Ct. 12 (52 L. Ed. 78, 12 Ann. Cas. 757), the Supreme Court, speaking through Mr. Justice Peckham, says:

"The case before us is one which the facts make exceptional. It is made entirely clear that the board of equalization did not equalize the assessments in the cases of these corporations, the effect of which was that they were levied upon a different principle or followed a different method from that adopted in the case of other like corporations whose property the board had assessed for the same year. * * * The result is an enormous disparity and discrimination between the various assessments upon the corporations."

The Supreme Court, in the case of Cummings v. National Bank, 101 U. S. 158, 25 L. Ed. 903, approves the rule stated in Exchange Bank of Columbus v. Hines, 3 Ohio St. 15:

"In construing this provision of the Constitution the Supreme Court of Ohio has said that 'taxing by a uniform rule requires uniformity not only in the rate of taxation, but also uniformity in the mode of the assessment upon the taxable valuation. Uniformity in taxing implies equality in the burden of taxation, and this equality of burden cannot exist without uniformity in the mode of the assessment, as well as in the rate of taxation. But this is not all. The uniformity must be coextensive with the territory to which it applies. If a state tax, it must be uniform over all the state; if a county, town or city tax, it must be uniform throughout the extent of the territory to which it is applicable. But the [word] uniformity in the rule required by the Constitution does not stop here. It must be extended to all property subject to taxation, so that all property must be taxed alike, equally, which is taxing by a uniform rule.' * * * We are not aware that this decision has ever been overruled."

In Re Opinion of the Justices (Supreme Judicial Court of Massachusetts) 220 Mass. 613, 108 N. E. 570, the Supreme Court of Massachusetts held that property in that state must be taxed upon an ad valorem basis, and that a statute which would undertake to require the valuation of certain classes of property for taxation by "capitalizing the income produced thereby at certain rates would be invalid." The court said:

"It does not rest the assessment upon any uniform method. It enables the Legislature or a public officer to readjust the multipliers according to a fluctuating judgment of what may be desirable, even to the extent of accomplishing in practice great disproportion. The theory behind the bill would permit manifold classifications of divers kinds of real as well as personal estate. If extended to its logical conclusions, it would be difficult to trace any remaining constitutional protection to the taxpayer."

The case of Standard Oil Co. v. Howe, 257 Fed. 481, 168 C. C. A. 485, being a suit by the Standard Oil Company, a corporation, against Charles R. Howe and others, members of the tax commission and of the board of equalization of the state of Arizona, and others, and in which complainant sought to enjoin the collection of taxes unlawfully levied and assessed, the Circuit Court of the Ninth Circuit passed upon the identical question involved in the case at bar, the right of the taxing authority to fix the valuation by capitalization of average net earnings. In that case the defendants moved to dismiss the bill for want of

equity, the trial court granted the motion, and the defendants appealed. After fully considering the various constitutional and statutory provisions of Arizona relating to the subject of taxation, the Circuit Court held:

"That the action of the board was fundamentally erroneous in principle, the assessment was unwarranted in law, and we think appellant should not be denied equitable relief."

The judgment of the court dismissing the bill was reversed, and the cause remanded, with instructions to the lower court to issue a temporary injunction.

The tax commission of Arizona seems to take unto itself the right to say that the complainant, the Bank of Arizona, may earn 12½ per cent. on the total actual value of its assets, and no more, and that the actual value of its assets for taxing purposes is always eight times the amount of its average annual net earnings for the five preceding years, regardless of any element of value indicated by the statute. Should this method of fixing valuation be sanctioned, there is nothing to prevent the Assessor from capitalizing the earnings at 10 per cent., 5 per cent., or 4 per cent., and using 10, 20, or 25 as a multiplier, depending upon the whim of the officer making the assessment. How the taxing authorities can ever hope to disclose the actual value of tangible assets by capitalizing average net earnings is beyond comprehension. In my opinion, the only way this method can be authorized is by amendment both of the Constitution and the statutes of Arizona.

It follows that the tax levies against complainant's property for the years 1921 and 1922 are void, and that the defendants and each of them, their successors, agents, and employees, should be permanently enjoined from in any way or manner listing or entering upon the delinquent tax list or back tax books of the county of Yavapai, state of Arizona, any taxes collected upon or on account of said valuation made by said defendants and from in any way or manner attempting to enforce or collect said taxes against complainant or its property or from instituting or prosecuting or causing to be instituted or prosecuted any suit or proceeding whatever to enforce or collect the same.

[9] There remains one other question to be determined. In cause E-58, the complainant made a tender and deposited in this court the sum of $8,222.90 in payment of its taxes for the year 1921, and in E-60 tendered and deposited the sum of $5,561.13 in payment of its taxes for 1922, and in its bill in each case prays that the court direct the treasurer and tax collector of the county of Yavapai to accept and receive these sums in full payment of its taxes for these years. This is equivalent to asking the court to fix the valuation of its property. According to the view I take of this question, these sums are insufficient. In 1921 the bank returned a verified statement of its assets, consisting of capital, $50,000; surplus, $250,000; and undivided profits, none. The evidence, however, shows that the bank had on hand at that time a fund amounting to $136,273.95, represented by cashier's checks. Of this sum, $50,748.67 was represented by bona fide customers' checks issued in the regular course of banking business. Of the remaining fund, $35,877.36 was reserved for the payment of future taxes, and $49,647.-

92 was reserved for the payment of possible losses from bad loans, which the bank may never sustain. These last two items should have been returned as' undivided profits, and, when added to the capital and surplus, make a total sum of $385,525.28, which is hereby fixed as the valuation of complainant's property for the year 1921, and complainant should pay a tax on that sum according to the rates of taxation fixed for that year.

In 1922 the bank made a verified return of its taxable assets, showing capital, $50,000; surplus, $250,000; and undivided profits, none. The bank had on hand cashier's checks representing $126,781.08. Of this sum, $43,002.60 was represented by bona fide customers' checks issued in the regular course of business. Of the remaining sum, $23,168 was reserved for the payment of taxes, and $60,610.48 was reserved for the payment of possible losses on bad loans, which the bank may never sustain. These last two sums, amounting to $83,778.48, should have been returned as undivided profits, and, when added to the capital and surplus, make a total sum of $383,778.48, which is hereby fixed as the valuation of complainant's property for the year 1922, and complainants should pay to the county treasurer of Yavapai county a tax on said sum according to the rates of taxation fixed for that year.

Complainant should be awarded its costs herein expended. It is so ordered.

1. Receivers ⬤158(4)—Claims for rent not entitled to preference on receivership.
   Claims for rent for leased lines are not entitled to preference on insolvency and receivership of lessee company.

2. Receivers ⬤159—Lessor held not entitled to lien by reason of diversion of general funds.
   Diversion of general funds of lessee of street railways to payment of mortgage interest instead of rentals did not entitle lessors to an equitable lien superior to the lien of mortgagees.

3. Receivers ⬤163—Interest allowed on claim for rentals.
   On insolvency and receivership of lessee of street railroads, interest will be allowed on claims for rental.

4. Street railroads ⬤49—Lessee required to keep road equipped and return.
   Lessee of horse car line held required by the lease to keep the road equipped and return it in such condition after substitution of electric motive power.

5. Street railroads ⬤61(1)—Loss of franchise on failure to comply with conditions.
   Failure to comply with the conditions of street railway franchises may result in their loss, or subject the owner to other consequences.

6. Street railroads ⬤49—Lessors held entitled to return of equipment in kind.
   On insolvency and receivership of lessee of a number of lines operated as a unit, held, that lessors were entitled to a return of cars, tools, etc., in kind, and that the lessee was not only liable for money damages.

⬤For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes